IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
January 17, 2001 Session

## STATE OF TENNESSEE v. JOSEPH DARRYL TAYLOR

**Direct Appeal from the Circuit Court for Marshall County**
**No. 13945     Charles Lee, Judge**

**No. M2000-00525-CCA-R3-CD _ Filed May 31, 2001**

Defendant, Joseph Darryl Taylor, was convicted of attempt to commit sexual battery, attempt to commit rape, and aggravated kidnapping. In this appeal as of right, Defendant contends that the evidence adduced at trial concerning all three offenses was insufficient to find him guilty and that the trial court erred when it sentenced Defendant. Following a review of the record, we affirm the judgment of the trial court in part and reverse in part.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed in Part and Reversed in Part.**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, JJ., joined.

John B. Nisbet, III, Cookeville, Tennessee (on appeal); Donna Orr Hargrove, District Public Defender; and Andrew Jackson Dearing, III, Assistant Public Defender, Fayetteville, Tennessee (at trial), for the appellant, Joseph Darryl Taylor.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Smith, Assistant Attorney General; W. Michael McCown, District Attorney General; and Weakley E. Barnard, Assistant District Attorney General, for the appellee, the State of Tennessee.

## OPINION

Defendant, Joseph Darryl Taylor, was indicted by a Marshall County Grand Jury for attempt to commit sexual battery, attempt to commit rape, and two counts of aggravated kidnapping. Following a jury trial, Defendant was convicted of attempt to commit sexual battery, a Class A misdemeanor, attempt to commit rape, a Class C felony, and one count of aggravated kidnapping, a Class B felony. The jury returned a verdict of not guilty on the second count of aggravated kidnapping. Thereafter, the trial court sentenced Defendant to eleven months, twenty-nine days for his attempted sexual battery conviction, fifteen years as a career offender for his attempted rape

conviction, and twelve years as a violent 100% Range I offender for his aggravated kidnapping conviction. The trial court further ordered that Defendant's conviction for attempted sexual battery be merged as a lesser-included offense with his conviction for attempted rape. Further, the trial court ordered Defendant's conviction for attempted rape be merged with his conviction for aggravated kidnapping, pursuant to the decision of our supreme court in State v. Anthony, 817 S.W.2d 299 (Tenn. 1991).

In this appeal, Defendant contends that the evidence adduced at trial was insufficient to convict him for all three offenses and that the trial court erred when it sentenced Defendant. In its reply brief, the State appeals the trial court's "merger" of Defendant's convictions into a single conviction for aggravated kidnapping, arguing that the facts presented at trial were sufficient to support independent convictions for all offenses. The State further requests that this Court reinstate separate sentences for Defendant and order consecutive sentencing.

After reviewing the record, we conclude that the evidence was sufficient to support Defendant's three convictions. Notwithstanding, we reverse and dismiss Defendant's conviction for attempted sexual battery because dual convictions for attempted rape and sexual battery cannot be sustained on the facts presented. See State v. Barney, 986 S.W.2d 545 (Tenn. 1999). Similarly, the trial court correctly determined that State v. Anthony also precludes Defendant from suffering criminal liability for both aggravated kidnapping and attempted rape. According to Anthony and its progeny, a separate conviction for kidnapping may violate due process when the kidnapping is essentially "incidental" to other offenses for which a defendant has been convicted. We hold that Defendant's crime of aggravated kidnapping was "incidental" to his attempt to commit rape. Therefore, we reverse the trial court's judgment merging Defendant's conviction for attempted rape into his aggravated kidnapping conviction; we reverse and dismiss the kidnapping conviction and reinstate Defendant's conviction and sentence for attempted rape.

## I. FACTUAL BACKGROUND

Defendant met the victim, thirteen-year-old A.S., while he lived next door to the victim's family on Park Street in Lewisburg, Tennessee. (The minor victim will be referred to herein by his initials.) On May 16, 1999, approximately three to four weeks after Defendant moved to another house in the same neighborhood, A.S. rode his bicycle past Defendant's new address. He stopped to say "Hi" when he noticed Defendant working on his car in the driveway. Defendant informed A.S. that he was planning to drive to Shelbyville to visit a friend and, if A.S. came back at 11:00 a.m., he could accompany Defendant on the trip. Defendant also told A.S. that his parents did not need to know of their plan.

In the meantime, A.S. went to look for his sixteen-year-old brother, Timothy, who was fishing in a nearby creek. Because Timothy wore a watch, A.S. asked him to keep him informed of the time so A.S. could return to Defendant's house at 11:00. Timothy did not comply with his request. When A.S. arrived at Defendant's house twenty minutes late, Defendant told him the trip was off and invited him into the house to watch television instead. A.S. accepted.

The television was in Defendant's bedroom, and they started watching a scary program. Initially, A.S. sat on one end of Defendant's bed and Defendant sat on the other. Approximately fifteen minutes later, Defendant started "scooting" closer to A.S.. Eventually, when they were sitting only inches apart, Defendant placed his hand on A.S.'s belly near his belly button and began to rub it in a circular motion. Defendant told A.S. that "he liked girls, but he liked boys, too" and that, "if [A.S.] f---ed him, he would buy [A.S.] anything." A.S. started to cry. He told Defendant he "wasn't like that" and pushed him away. A.S. was scared at this point and decided to leave. But before he could take more than five steps toward the door, Defendant picked him up by the waist with both arms and "slammed" him onto the bed. A.S. landed on his back and his head hit the wall. Defendant pinned A.S. down with his body and told him to stop crying--he "didn't have to be scared."

A.S. was unable to move his arms with Defendant on top of him, and he did not stop crying even after Defendant ordered him to stop. When Defendant told A.S. that "he might as well f— [him] now because he knowed [sic] that [A.S.] was going to go home and tell mom and dad," A.S. started crying even harder. Defendant let him sit up then, but stayed right beside him on the bed. They were sitting only inches apart, and the television was still on. When Defendant turned his head to look at it, A.S. saw his chance for escape and "took off running" as fast as he could. Once out the front door, A.S. leaped onto his bicycle and rode away. He testified that he did not look back and was unaware whether or not Defendant chased him.

After A.S. arrived home, he immediately found his brother, Timothy, who was next door at the neighbor's house. Timothy testified that A.S. was crying and upset. After A.S. told him that Defendant "tried to rape him," Timothy made A.S. tell their father, James, what happened. James took A.S. with him to find Defendant. Shortly thereafter, they discovered Defendant as they were driving to his house. Defendant was headed in the opposite direction and smiled at them as he passed. By the time James turned the car around, Defendant was gone. James proceeded to the police department and reported the incident. The police arrested Defendant early the next day, between 2:00 and 3:00 a.m.

At trial, A.S. further testified that he had visited Defendant on other occasions but Timothy was ordinarily with him. They usually only stayed fifteen or twenty minutes and watched television or talked about cars and baseball cards. They often sat in Defendant's bedroom because it was the only room with a television. A.S. testified that, prior to this incident, Defendant had never given him a reason to believe that he and Defendant were not friends.

Beth Rhoton, an investigator with the Lewisburg Police Department, testified that she usually worked cases where sex abuse was involved. Rhoton interviewed A.S. on May 16, 1999, between approximately 5:00 and 6:30 p.m. A.S. was still shaking, and appeared very nervous and scared. On cross-examination, Rhoton testified that A.S. did not require medical treatment.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant contends that the evidence presented at trial was insufficient to support his conviction for attempted sexual battery, attempted rape, and aggravated kidnapping. The State responds that the evidence was sufficient to support separate convictions for all three offenses.

When evidentiary sufficiency is questioned on appeal, we must determine "whether, after considering the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." State v. Hall, 8 S.W.3d 593, 599 (Tenn. 1999). "On appeal, the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." Id. Additionally, we recognize that a guilty verdict by a jury, approved by the trial court, "accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). A guilty verdict removes the presumption of innocence, replacing it with a presumption of guilt. Id. The defendant has the burden of demonstrating that the evidence is insufficient to support his or her conviction. Id. Questions concerning the credibility of witnesses, the weight and value of evidence, and factual issues raised by the evidence are resolved by the trier of fact. Id. This Court does not reweigh or reevaluate the evidence. Id.

### A. Attempt to Commit Sexual Battery

As applicable to this case, sexual battery is unlawful sexual contact with a victim by the defendant accomplished without the consent of the victim and where the defendant knows or has reason to know at the time of the contact that the victim did not consent. See Tenn. Code Ann. § 39-13-505(a)(2) (1997). Unlawful sexual contact "includes the intentional touching of the victim's, the defendant's, or any other person's intimate parts, or the intentional touching of the clothing covering the immediate area of the . . . intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification. Id. § 39-13-501(6). "Intimate parts" include the "primary genital area, groin, inner thigh, buttock or breast of a human being." Id. § 39-13-501(2).

A person can be convicted of criminal attempt who, "acting with the kind of culpability otherwise required for the offense . . . [a]cts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense." Id. § 39-11-101(a)(3).

Defendant argues that the proof does not support the jury's finding that Defendant engaged in conduct that constituted a "substantial step" toward touching the victim's intimate parts. Although the proof shows that Defendant rubbed the victim's belly, held the victim down, and talked dirty to the victim, Defendant maintains that this conduct was merely inappropriate and only frightened the victim. As such, Defendant argues that his actions did not rise to the level of a "substantial step" necessary to find him guilty of attempted sexual battery. While we disagree with

Defendant and hold that the evidence was sufficient to support the conviction, we further hold that the facts presented do not support a separate conviction for attempted sexual battery. After a review of the record, we find Defendant's rubbing of the victim's belly button area was an "incidental" act, performed merely to facilitate his plan to rape A.S. As such, dual convictions for attempted sexual battery and attempted rape cannot be sustained.

The Tennessee Supreme Court had occasion to address the issue whether due process principles support separate convictions for two or more felonies arising from one particular course of conduct in State v. Barney, 986 S.W.2d 545 (Tenn. 1999). The question was whether two or more sexual acts may be the subject of separate convictions, and the supreme court found the test articulated in People v. Madera, 231 Cal. App.3d 845, 282 Cal. Rptr. 674 (1991), to be instructive. In Madera, the court upheld dual convictions for a defendant who rubbed a young boy's penis and also engaged in fellatio. The defendant argued that the touching was not only "incidental" to engaging in fellatio but also a part of the act. The California court considered the defendant's intent to be the critical consideration. The cardinal question was "whether [Madera's] touching of [the victim's] penis was to commit a separate base criminal act or to facilitate the oral copulations . . . that shortly followed." Id. at 679. If the act in question directly facilitated or was merely "incidental" to the accompanying sexual conduct (e.g., applying lubricant to the area of intended copulation), convictions for both acts would be barred. Id. at 680. On the other hand, if the act in issue was "preparatory" in the sense that the goal was sexual arousal of either victim or defendant, then separate convictions would not be improper. Id.

In its analysis, our supreme court suggested the following several factors may be relevant in determining whether conduct is "incidental," barring separate convictions, or "preparatory," with the intent to arouse the victim or perpetrator so that separate convictions are proper: (1) "temporal proximity," which analyzes time intervals between the acts; (2) "spatial proximity," which examines movement or re-positioning; (3) "intervening events" or an interruption in the occurrence of events; (4) "the sequence of the acts," e.g., serial penetration of different orifices as distinguished from repeated penetrations of the same orifice; and (5) "the defendant's intent" as demonstrated by conduct and statements. Barney, 986 S.W.2d at 548-49.

Considering the facts of this case in light of the decision in Barney, we find that Defendant's touching of the victim's belly was "merely incidental" to his attempt to commit rape, in lieu of "preparatory" which would allow a separate conviction for attempted sexual battery. To recount, A.S. testified that while he and Defendant were watching television, Defendant "scooted" close to him and rubbed his belly. While Defendant was engaged in rubbing the victim's belly button area, he also propositioned him, stating that "if [A.S.] f---ed him, he would buy [A.S.] anything." A.S. refused Defendant's offer and started to cry, telling Defendant that he "wasn't like that" and then pushed him away. When A.S. tried to leave, Defendant picked him up by the waist and "slammed" him onto the bed. At this point, Defendant pinned A.S. down with his body and told him that "he might as well f— [him] now because he knowed [sic] that [A.S.] was going to go home and tell mom and dad." Clearly, Defendant's language indicated his intent to have unlawful penetration of A.S. by Defendant or of Defendant by A.S., as defined in Tenn. Code Ann. § 39-13-503 (rape).

Applying the test from Barney, we find that four factors support a single conviction in this case--the fifth factor is inapplicable. Considering the first, "temporal proximity," we observe that the time interval, if any, separating the belly rubbing from Defendant's statement of intent to penetrate the victim while he pinned the victim down was quite brief. As such, it did not suffice to sufficiently distinguish them. Likewise, the second factor concerning "spatial proximity" supports one conviction–there was no significant movement or re-positioning of the victim between the acts. Since there was no interruption in the occurrence of events, the third factor does not support independent prosecution and the fourth factor, "sequence of the acts," does not apply. The last factor, "defendant's intent" as demonstrated by conduct and statements, also suggests one criminal act. Defendant's fondling of A.S.'s belly, declaration of homosexuality, and proposition for sexual penetration can be viewed collectively as incidental to an attempt to commit rape . In sum, we have determined that the actions taken by Defendant which would support a conviction for attempted sexual battery were one continuous action committed to directly facilitate the attempted rape and, therefore, Defendant's conviction for the misdemeanor offense of attempted sexual battery must be reversed and dismissed.

## B. Attempt to Commit Rape

As applicable to Defendant's case, rape is defined as unlawful sexual penetration of a victim by the defendant, or of the defendant by the victim, accomplished by force or coercion. See Tenn. Code Ann. § 39-13-503 (1997). As previously noted, a person is guilty of criminal attempt who, "acting with the kind of culpability otherwise required for the offense . . . [a]cts with intent to complete a course of action or cause a result that would constitute the offense . . . and the conduct constitutes a substantial step toward the commission of the offense." Id. § 39-11-101(a)(3).

Similarly to his previous argument, Defendant maintains that the proof is insufficient to find that Defendant engaged in conduct that constituted a "substantial step" toward committing the offense of rape. Defendant concedes that he rubbed the victim's belly, held the victim down, and talked dirty to the victim, but insists that this conduct was merely inappropriate and only frightened A.S. By contrast, the State contends that the evidence is sufficient to support a finding that Defendant intended to rape the victim and that his entire course of action was corroborative of that intent. We agree with the State.

The record shows that, after Defendant rubbed the area surrounding A.S.'s belly button and clearly stated his desire to penetrate him, he forcibly prevented A.S. from leaving his bedroom, restrained him on the bed, then conveyed for the second time his intent to engage in unlawful sexual penetration. Only when A.S.'s crying increased did Defendant get off from on top of him so that A.S. could sit up. Although Defendant remained close to A.S.'s side, A.S. nevertheless escaped by unexpectedly bolting out of the room when Defendant turned his head. Attempt to commit rape requires the State to prove that Defendant intended to complete the crime and that he took a "substantial step," i.e., that Defendant's entire course of action was corroborative of his intent to commit the offense. The State met this burden. See State v. Fowler, 3 S.W.3d 910, 912 (Tenn. 1999) (evidence sufficient to find substantial step taken toward commission of statutory rape where defendant stated his intention to have sex with a young boy and paid money; requiring more, e.g.,

that the defendant take delivery of the boy or actually begin some act that would approach sexual penetration, would be "inconsistent with the general goal of crime prevention" and create a "dangerous precedent"). Defendant's statement to the victim in conjunction with the other facts noted above are sufficient for a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt, especially when we consider the evidence in a light most favorable to the prosecution as we must. Defendant is not entitled to relief on this issue.

### C. Aggravated Kidnapping

As relevant to the facts in Defendant's case, aggravated kidnapping is false imprisonment, as defined in § 39-13-302, committed to facilitate the commission of any felony or flight thereafter. See Tenn. Code Ann. § 39-13-304 (1997). According to Tenn. Code Ann. § 39-13-302, a person commits the offense of false imprisonment when he or she knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty.

In his brief, Defendant contends that "there is no evidence in the record that [Defendant] interfered substantially with the victim's liberty in order to facilitate the commission of sexual battery." Instead of arguing that the proof fails to show interference with the victim's liberty, however, Defendant maintains that his conviction for aggravated kidnapping cannot stand because guilt for the accompanying felony was not established. We disagree.

The indictment alleges that the false imprisonment was committed to facilitate the commission of the felony, sexual battery. The evidence presented at trial established that Defendant confined A.S. by forcibly grabbing him and "slamming" him onto the bed when he tried to leave Defendant's bedroom. The unlawful confinement was exacerbated when Defendant pinned A.S. underneath him with his body. Our current aggravated kidnapping statute does not require a particular distance of removal or any particular duration or place of confinement. State v. Dixon, 957 S.W.2d 532, 535 (Tenn. 1997). It is the *purpose* of the removal or confinement and not the distance or duration that supplies a necessary element of aggravated kidnapping. Id. (emphasis added).

Moreover, we found the evidence sufficient to convict Defendant of attempted sexual battery. However, we concluded that under the facts in this case, dual convictions for attempted rape and attempted sexual battery were not permissible under State v. Barney, 986 S.W.2d 545 (Tenn. 1999). The State was not required to prove that Defendant actually succeeded in committing sexual battery; proof of attempt to commit the crime was sufficient. Defendant is not entitled to relief on this issue.

### III. MERGER OF CONVICTIONS

The State appeals the trial court's decisions to merge Defendant's convictions for attempted sexual battery into the conviction for attempted rape and to merge Defendant's convictions for these two crimes into a single conviction for aggravated kidnapping. The State asks this Court to reverse

the trial court's judgment, reinstating the jury's verdict against Defendant as three separate convictions.

At the conclusion of Defendant's trial, the jury rendered guilty verdicts against Defendant for attempted sexual battery, attempted rape, and aggravated kidnapping. The trial court first merged Defendant's conviction for attempted sexual battery into his conviction for attempted rape on the ground that "the attempted sexual battery is – was a part of the attempted rape and it's a lesser-included [offense]." As stated above, dual convictions for attempted rape and attempted sexual battery in this case are not permissible under Barney.

In addition to merging Defendant's conviction for attempted sexual battery into his conviction for attempted rape, the trial court also merged Defendant's conviction for attempted rape into his conviction for aggravated kidnapping pursuant to State v. Anthony, 817 S.W.2d 299 (Tenn.1991). Specifically, the trial court stated that "the victim in this case was detained during the course of the attempted rape" and that there was "no question in the court's mind that the Supreme Court of our State would set one of these aside if the [trial] court did not merge them." The trial court was correct when it determined that Anthony controls this issue. However, since the aggravated kidnapping was "incidental" to the attempted rape, we hold that the aggravated kidnapping conviction should be reversed and dismissed and the conviction for attempted rape reinstated.

Anthony outlines the Tennessee Supreme Court's attempt to delineate exactly when criminal conduct, itself an element of or inherently part of a particular crime, should also be prosecuted as a separate crime. Id. at 306-07. Anthony pertained to a kidnapping conviction, and the test that evolved focused on whether the confinement, movement, or detention at issue was essentially *incidental* to the accompanying felony and, therefore, *not sufficient to support a separate conviction.* Id. at 306 (emphasis added). In State v. Dixon, 957 S.W.2d 532 (Tenn. 1997), the supreme court refined the Anthony test holding that, once the court determines that the movement or confinement [kidnapping] was beyond that necessary to consummate the act of the concurrent felony, further inquiries should determine whether the additional movement or confinement: (1) prevented the victim from summoning help; (2) lessened the defendant's risk of detection; or (3) created a significant danger or increased the victim's risk of harm. Dixon, 957 S.W.2d at 535. Anthony and Dixon are intended to prevent the injustice which would occur if a defendant could be convicted of kidnapping where the only restraint utilized was that necessary to complete the act of rape or robbery.

Applying the test delineated in Dixon, we find that the restraint used by Defendant to commit the offense of aggravating kidnapping was not beyond that necessary to consummate Defendant's attempted sexual offense. In other words, the record reveals no proof that A.S. suffered additional confinement or movement beyond that directly related to Defendant's attempts to rape him. This conclusion is supported by a statement from the decision in Dixon where the supreme court held that, "[h]ad [the defendant] confined and attempted to sexually penetrate the victim where he initially physically assaulted her, the confinement would have been merely incidental to the attempted sexual battery." Id. at 535. At the sentencing hearing, neither party disputed that, in the event the evidence

-8-

was deemed sufficient to convict Defendant of aggravated kidnapping, the rationale of Anthony would defeat convictions for *both* aggravated kidnapping and attempted rape according to principles of due process. Accordingly, because the confinement and/or detention of the victim was merely "incidental" to the accompanying felony, and because it was not sufficient to support a separate conviction, the conviction for aggravated kidnapping cannot stand.

In cases decided under Anthony, the kidnapping conviction, when involved, is the conviction that has been dismissed. See State v. Carson, 950 S.W.2d 951, 953 n.3 (Tenn. 1997) (trial court set aside defendant's conviction for aggravated kidnapping post-trial under Anthony); State v. Denton, 938 S.W.2d 373, 378 (Tenn. 1996) (when kidnapping is "essentially incidental" to another offense--most notably, robbery and rape–then the due process provision of the Tennessee Constitution prohibits a conviction for kidnapping); State v. Coleman, 865 S.W.2d 455, 457 (Tenn. 1993) (facts fully support convictions for aggravated robbery and aggravated rape, but not kidnapping under the Anthony rule); State v. Binion, 947 S.W.2d 867, 872-73 (Tenn. Crim. App. 1996) (trial court's dismissal of defendant's conviction for especially aggravated kidnapping affirmed where defendant was also convicted of attempted aggravated rape); State v. Gregory, 862 S.W.2d 574, 579 (Tenn. Crim. App. 1993) (judgment of acquittal regarding defendant's conviction for aggravated kidnapping held proper under Anthony).

In sum, we reverse the trial court's judgment merging Defendant's convictions. Because we determined that the conviction for attempted sexual battery cannot stand and the aggravated kidnapping offense was "incidental" to the attempted rape, these convictions are reversed and dismissed and Defendant's conviction for attempted rape is reinstated.

## IV. SENTENCING

Defendant argues that the trial court erred by failing to consider a properly applicable mitigating factor when it imposed Defendant's sentence for aggravated kidnapping, a Class B felony, and that it also erred when it categorized Defendant as a career offender in determining his sentence for attempted rape, a Class C felony. We disagree.

Appellate review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. §§ 40-35-401(d), 402(d). The burden is on the appealing party to show that the sentencing is improper. Sentencing Commission Comments, Tenn. Code Ann. § 40-35-401. If the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

However, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). Therefore, meaningful appellate review requires that the trial court place on the record its

reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor applied, and articulate how the mitigating and enhancement factors were evaluated and balanced in determining the sentence. Tenn. Code Ann. § 40-35-210(f) (1990); State v. Jones, 883 S.W.2d 597, 599 (Tenn. 1994). Since the record reveals that the trial court considered the sentencing principles and all relevant facts and circumstances, our review is de novo with a presumption that the trial court's judgment is correct.

In conducting a de novo review, we must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf, and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, 103, 210; see Ashby, 823 S.W.2d at 168; State v. Moss, 727 S.W.2d 229 (Tenn. 1986).

The sentence to be imposed by the trial court for a Class B, C, D and E felony is presumptively the minimum sentence in the range when no enhancement or mitigating factors are present. See Tenn. Code Ann. § 40-35-210(c). Procedurally, the trial court is to increase the sentence within the range based upon the existence of enhancement factors and then reduce the sentence as appropriate for any mitigating factors. Id. § 40-35-210(d), (e). The weight to be afforded an existing factor is left to the trial court's discretion so long as it complies with the purposes and principles of the Sentencing Act, and its findings are adequately supported by the record. Id. § 40-35-210, Sentencing Commission Comments; Moss, 727 S.W.2d at 237; see Ashby, 823 S.W.2d at 169.

The record reveals that the trial court sentenced Defendant to twelve years as a violent 100% Range I offender for his aggravated kidnapping conviction and fifteen years as a career offender for his attempted rape conviction. The trial court found no mitigating factors were applicable to Defendant's case and then applied the following enhancement factors to all counts: (1) the defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range, and (8) the defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release into the community, giving "great weight" to factor (1). Tenn. Code Ann. § 40-35-114(1), (8) (1997). In the time period between 1978 and 1990, Defendant was convicted of assault with intent to sexually molest a child under twelve, 3rd degree criminal sexual conduct, sexual battery, and four counts of statutory rape. The trial court also applied enhancement factor (7), used when the offense involves a victim and was committed to gratify the defendant's desire for pleasure or excitement, to Defendant's sentence for aggravated kidnapping and stated regarding this offense that "if there is ever a case where the defendant should receive the maximum sentence, it is this case." Id. § 40-35-114(7).

Defendant first contends that the court erred when it failed to consider the mitigating factor contained in Tenn. Code Ann. § 39-13-304(b)(2), which may be applied to a sentence for aggravated kidnapping when "the offender voluntarily releases the victim alive . . . ." The State responds that the record is devoid of proof to support Defendant's claim that he released the victim "voluntarily." We agree with the State that the record is devoid of proof to support Defendant's claim that he

-10-

released the victim "voluntarily." The evidence shows that the victim's "release" was due only to his successful escape.

Defendant also contends that the trial court erred when it categorized him as a career offender when determining his sentence for the attempted rape conviction because "the State failed to give adequate notice pretrial that the State intended to seek enhanced punishment" as either a multiple, persistent, or career offender. Defendant complains that "in order to have a defendant sentenced as something other than a standard, Range I offender, the State is required to give the defendant notice" pursuant to Tenn. Code Ann. § 40-35-202(a). The State responds that Defendant waived consideration of any defect in the notice of enhancement, filed by the State on September 10, 1999, when he failed to object at the sentencing hearing. Notwithstanding waiver, the State further submits that the notice provided in this case substantially complied with statutory requirements and, further, that it served its purpose of providing fair notice to Defendant that his sentence was subject to being enhanced above the "standard" range.

The subject of Defendant's complaint is the alleged noncompliance by the State with part (a) of Tenn. Code Ann. § 40-35-202 which states, in relevant part, the following: "If the district attorney general believes that a defendant should be sentenced as a multiple, persistent or career offender, the district attorney shall file a statement thereof with the court and defense counsel not less than ten (10) days before trial or acceptance of a guilty plea." Tenn. Code Ann. § 40-35-202(a) (1997). The notice "must set forth the nature of the prior felony convictions, the dates of the convictions and the identity of the courts of the convictions." Id. Part (b) of Tenn. Code Ann. § 40-35-202 pertains to the applicability of enhancement factors and whether a sentence should be enhanced within the appropriate range. It also speaks in terms of notice to the defendant *following* a finding of guilt. Since Defendant's argument on this issue relates to the trial court's determination concerning the appropriate range of his sentence, and does not dispute the applicability of the enhancement factors used by the trial court, we conclude that only part (a) is relevant to the instant issue and confine our analysis accordingly.

The purpose of the notice requirement is to provide a defendant with "fair notice" that he is "exposed to other than standard sentencing." State v. Adams, 788 S.W.2d 557 (Tenn. 1990). It is intended to facilitate plea-bargaining, to inform decisions to enter a guilty plea, and to assist with decisions regarding trial strategy. When a detail of the required information is omitted or incorrect, the inquiry should be whether the notice was "materially misleading." Id. at 559. The supreme court specifically held that "when the State has substantially complied with Section 40-35-202(a), an *accused has a duty to inquire about an ambiguous or incomplete notice* and must show prejudice to obtain relief. But it is the State's responsibility to assert the appropriate sentencing status in the first instance, and it may not shift these burdens to an accused by filing what is essentially an empty notice." Id. (emphasis added).

The court in Adams found that the State had filed an effectively "empty notice" because the notice at issue gave "no relevant information at all." Id. Specifically, the notice did not provide details of former judgments and, "[n]ot only was it inadequate to advise that a Range II sentence was sought, it was positively misleading, as it dealt exclusively with matters relevant to another phase

-11-

of sentencing." The notice in Adams is distinguishable from the State's notice before us now. The record reveals that the State filed a document entitled "Notice of Enhancement" on September 10, 1999, more than two months prior to Defendant's trial and more than three months prior to his sentencing hearing, which also included a citation to Tenn. Code Ann. § 40-35-202. The body of the notice stated that "the Office of the District Attorney General . . . gives notice of intent to seek enhanced punishment, should the defendant be convicted of a felony, for the following convictions . . . ," then proceeded to list seven of Defendant's convictions for Class E felonies, including four for statutory rape, all involving unlawful sexual conduct with children.

We find that the State substantially complied with Tenn. Code Ann. § 40-35-202(a). The notice in the record contains the State's express intent "to seek enhanced punishment," sets forth the nature of the prior felony convictions, the dates, and the identity of the courts of the convictions, and was filed months in advance of the trial and sentencing hearing. It is undisputed that the information was accurate. In addition, the notice plainly stated that the State would seek "enhanced punishment." Since our sentencing system contains only three range categories above the "standard" range, the "enhanced punishment" herein logically means punishment as a multiple, persistent, or career offender.

Where, as here, the State has substantially complied with the statute, the accused has a duty to inquire about an ambiguous or incomplete notice and must show prejudice to obtain relief. Id. In the case before us, there is no question that the State's notice made Defendant aware of its intent to seek an enhanced range of punishment. He was provided a list of the convictions upon which the state intended to rely well in advance of trial and he was, thus, in a position to plan case strategy, including trying to determine whether or not the defendant had actually been convicted of the crimes listed in the notice. The early filing of the notice provided Defendant with sufficient time to conduct inquires regarding any ambiguities or mistakes in the document. He declined to do so. Neither did he object to the notice's ambiguity at the sentencing hearing. We may assume that Defendant was aware of his own extensive criminal history prior to trial and note that he has failed to show any prejudice arising from a lack of knowledge as to which particular range the State was contemplating to seek for purposes of sentencing. Even where the notice is not filed until the date the trial begins, it is not rendered ineffective in the absence of some showing of prejudice on the part of the accused, particularly where defense counsel does not move for a continuance or postponement of the trial as he is clearly authorized to do under Rule 12.3(a). State v. Stephenson, 752 S.W.2d 80, 81 (Tenn. 1998). This result is especially true in the present case where the matter of improper notice was not even raised in the trial court, at the sentencing hearing, or in the motion for new trial.

Since Defendant has not alleged, much less established, any prejudice from his perceived shortcoming in the notice, and the notice was clearly sufficient under Tenn. Code Ann. § 40-35-202(a) to provide Defendant with the "fair notice" contemplated by our supreme court in Adams, he is not entitled to relief on this issue.

## V. CONCLUSION

-12-

For the foregoing reasons, we affirm Defendant's conviction for attempted rape and reinstate that conviction and sentence.  Defendant's convictions for attempted sexual battery and aggravated kidnapping are reversed and dismissed.

_____
THOMAS T. WOODALL, JUDGE