# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs February 20, 2008

## STATE OF TENNESSEE v. MOHAMED OMAR MUSE

**Appeal from the Criminal Court for Davidson County**
**No. 2005-D-2928      Cheryl Blackburn, Judge**

———————————————

**No. M2006-02250-CCA-R3-CD - Filed October 17, 2008**

———————————————

The Appellant, Mohamed Omar Muse, appeals his convictions by a Davidson County jury and the resulting sentences imposed by the Davidson County Criminal Court for the offenses of sale of less than point five (.5) grams of cocaine and possession of point five (.5) grams or more of cocaine with intent to sell or deliver.  On appeal, Muse argues: (1) that the evidence offered at trial was insufficient to support his convictions; (2) that the trial court erred by failing to instruct the jury regarding casual exchange; (3) that the trial court erred in denying his motion to suppress evidence seized from his person at the time of his arrest; (4) that the trial court erred in denying his motion for recusal based upon alleged racial and religious prejudices of the trial court; and (5) as to sentencing, that the trial court erred in its weighing of mitigating and enhancement factors and in denying a probationary or community corrections sentence.  Upon complete review of the record and the arguments of the parties, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

DAVID G. HAYES, SR.J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and NORMA MCGEE OGLE, JJ., joined.

Paula Ogle Blair, Nashville, Tennessee, for the Appellant, Mohamed Omar Muse.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Victor S. Johnson III, District Attorney General; and Bret Gunn, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### Factual Background

A Davidson County grand jury returned an indictment charging the Appellant with sale of less than .5 grams of cocaine, a Class C felony, possession of .5 grams or more of cocaine with intent to sell or deliver, a Class B felony, and the misdemeanor offenses of possession of marijuana and resisting arrest.  The indictment alleged that the offenses occurred on February 1,

2005. The State dismissed the charge alleging simple possession of marijuana and the Appellant pled not guilty to the remaining offenses. A jury trial was conducted on April 17 and 18, 2006.

The proof at trial established that Officer Joel Goodwin of the Metro Nashville Police Department utilized the services of a paid criminal informant ("CI"), whom he knew to be reliable and credible based upon previous experiences, to arrange a controlled purchase of cocaine. The CI used Officer Goodwin's telephone to call an individual known as "Jamal," who directed her to meet an individual driving a blue Crown Victoria who would deliver the cocaine at a laundry mat. Officer Goodwin provided the CI with fifty dollars of previously photocopied "buy money." The CI, who wore a listening device that did not record but was monitored by Officer Goodwin during the transaction, walked to the laundry mat parking lot and entered the rear passenger side of a blue Crown Victoria. From his nearby position, Officer Goodwin observed the CI enter the blue vehicle, and he heard, through the listening device worn by the CI, the voices of two individuals besides the CI inside the vehicle. Officer Goodwin testified that there was a primary conversation between the CI and one individual in the vehicle, who had "an accent," regarding the amount of cocaine being purchased. The CI then exited the vehicle, walked back to the vehicle of Officer Goodwin, and gave him a white rock substance which field tested positive for cocaine. Officer Goodwin spoke with the CI, who affirmed that there were two people in the blue Crown Victoria, which had pulled away from the parking lot. Officer Goodwin paid the CI forty dollars for her services and released her.

Officers Josh Walters and James Freeman, who had been serving as "takedown" officers in the operation and had also been observing the transaction, pursued the blue Crown Victoria for approximately one mile, ultimately stopping the vehicle which contained two occupants, one of whom was the Appellant, who was the driver of the vehicle. A search of the Appellant revealed the fifty dollars in previously photocopied "buy money,"as well as another one hundred dollars in cash.

Officer Goodwin arrived at the scene after the Appellant had been placed in custody. Officer Michael Dixon, another responding officer, attempted to search the Appellant. When the Appellant physically resisted, Officer Dixon "took him to the ground," at which time the officers observed a bag of what appeared to be marijuana "between the cheeks" of the Appellant's buttocks area. After the Appellant continued to grab and kick at police officers, a chemical spray was used to subdue him. In addition to the bag containing a small amount of green leafy substances, officers recovered a bag containing "white rocks" from the Appellant's buttocks area. After forensic testing, the rock-like substance obtained from the CI by Officer Goodwin weighed .2 grams and tested positive for cocaine. The rock-like substance inside the bag recovered from the Appellant's buttocks area weighed .9 grams and tested positive for cocaine.

A Davidson County jury returned guilty verdicts on the charges of sale of less than .5 grams of cocaine and possession of .5 grams or more of cocaine with intent to sell or deliver. The jury acquitted the Appellant of the charge of resisting arrest.

A sentencing hearing was held at which the Appellant testified, and his presentence report and other exhibits were admitted for consideration by the trial court. The record

demonstrates that at the time of his arrest on February 1, 2005 for the present charges, the Appellant was on probation for a July 26, 2004 conviction in Davidson County Docket Number 1389, for Class C felony sale of cocaine. The trial court sentenced the Appellant as a Standard, Range I offender to five years in the Department of Correction for sale of less than .5 grams of cocaine, a Class C felony, and ten years in the Department of Correction for the possession of .5 grams or more of cocaine with intent to sell or deliver, a Class B felony. The sentences were imposed concurrently to each other, resulting in an effective term of ten years. The ten year sentence was imposed consecutively to the sentence corresponding with the conviction for Davidson County Docket Number 1389. The Appellant moved for a new trial, and the trial court denied the motion. The Appellant timely appealed to this court.

**Analysis**

## I. Sufficiency of the Evidence

The Appellant argues that the evidence offered by the State at trial was insufficient to support his convictions for sale of less than .5 grams of cocaine and possession of .5 grams or more of cocaine with intent to sell or deliver.

Due process requires that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof, which is defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense. *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 2787 (1979). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

In our review of the issue of sufficiency of the evidence, the relevant question is "whether, after viewing the evidence in the light most favorable to the [State], any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789 (emphasis in original); see also Tenn. R. App. P. 13(e). Moreover, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this court does not re-weigh or re-evaluate the evidence. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). Nor may this court substitute its inferences drawn from circumstantial evidence for those drawn by the trier of fact. Id. (citing *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000); *Liakas v. State*, 199 Tenn. 298, 286 S.W.2d 856, 859 (1956)).

### a. Sale of less than .5 grams of cocaine

The Appellant argues that the evidence was insufficient to support his conviction for the sale of less than .5 grams of cocaine. The Appellant contends that the State failed to establish,

beyond a reasonable doubt, his identity as the person who sold cocaine to the criminal informant utilized by the police.

In the present case, in order to convict the Appellant of sale of cocaine, the State was required to prove that: (1) the Appellant sold less than .5 grams of cocaine, and (2) the Appellant did so knowingly. T.C.A. § 39-17-417(a)(3), (c)(2)(A) (Supp. 2004). This offense is classified as a Class C felony. *See id.*

Officer Goodwin testified that the criminal informant used his telephone, in his presence, to call an individual named "Jamal" in order to purchase fifty dollars' worth of cocaine. The CI then advised Goodwin that she had been instructed to meet an individual driving a blue Crown Victoria with tinted windows at an area laundry mat. While in his vehicle with the CI, Officer Goodwin subsequently provided the CI with fifty dollars in previously photocopied "buy money," and he observed the CI enter a blue Crown Victoria at the previously described location. Office Goodwin testified that he listened, via recording device, to a conversation about the drug transaction, primarily between the CI and another individual who had an accent.[1] After the CI emerged from the blue Crown Victoria, she returned to Officer Goodwin's vehicle and handed him a "white rock substance" which field tested positive as cocaine base.[2] Officer Goodwin observed the blue Crown Victoria exit the parking lot of the laundry mat onto Murfreesboro Road. Following uninterrupted surveillance of the Crown Victoria, Officers Walters, Freeman and Dixon stopped the vehicle approximately one mile down Murfreesboro Road and after a search of the Appellant, officers discovered him to be in possession of cocaine and the previously photocopied "buy money." We conclude that this evidence, viewed in a light most favorable to the State, was sufficient to identify the Appellant as the individual responsible for the sale of cocaine to the CI.

The Appellant further asserts that the State failed to prove that a sale transpired between the Appellant and the criminal informant because "Detective Goodwin did not search [the criminal informant's] private areas" or buttocks prior to the alleged controlled purchase. However, the evidence clearly established that the CI had already been searched, according to standard police procedure, prior to engaging in the controlled purchase of cocaine, and that no drugs were found on her person.

Finally, the Appellant argues that the State failed to prove that he acted knowingly because he "did not act with awareness," citing police testimony that the Appellant "appeared to be confused when he was taken out of the car." The issue of the Appellant's mental state was a question of fact for the jury. Viewing all of the evidence in a light most favorable to the State,

---

[1] Officer Goodwin testified that the other occupant of the blue Crown Victoria, a "Mr. Hughes," did not speak with an accent. The presentence report reflects that the Appellant reported that he was born and educated in Somalia, and that he relocated to Tennessee in 1997. The record further demonstrates that the Appellant used an interpreter while testifying at the suppression hearing.

[2] The CI was not called as a witness at trial.

we conclude that the evidence was legally sufficient to convict the Appellant of sale of cocaine beyond a reasonable doubt. This issue is, therefore, without merit.

### b. Possession of .5 grams or more of cocaine with intent to sell or deliver

With regard to his conviction for possession of .5 grams or more of cocaine with intent to sell or deliver, the Appellant "does not dispute the fact that he possessed a substance containing cocaine[,]" rather, he "disputes that he intended to sell or deliver the cocaine." He argues that the evidence was insufficient to support his conviction for this offense, citing the discovery of the cocaine in his buttocks by police, and proposing that "such a storage place is not a good way to market and sell a product." The Appellant further argues that the cocaine seized by police was intended for personal use.

"It is an offense for a defendant to knowingly . . . [p]ossess a controlled substance with intent to . . . deliver or sell such controlled substance." T.C.A. § 39-17-417(a)(4) (Supp. 2004). Possession of .5 grams or more of a Schedule II controlled substance with the intent to sell or deliver is a Class B felony. *Id*. § 39-17-417(a)(4), (c)(1). Tennessee Code Annotated section 39-17-419 (Supp. 2004) permits an inference based on the amount of the controlled substance possessed by the accused, along with other facts surrounding the arrest, that the substance was possessed for the purpose of selling or otherwise dispensing.

After engaging in the sale of cocaine to the previously described criminal informant, the Appellant was arrested and searched, and the police obtained a bag containing cocaine from "between the cheeks" of his buttocks area. Officer Dixon opined that, from his experience, "often . . . drug dealers keep drugs around their groin area or their buttocks area to hide it . . . from whoever tries to find it." The Appellant was arrested in possession of fifty dollars of previously photocopied "buy money" that had been provided to the criminal informant by police, as well as another one hundred dollars in cash. Viewing this evidence in a light most favorable to the State, we conclude that a rational juror could have found the elements of possession of .5 grams or more of cocaine with intent to sell or deliver beyond a reasonable doubt. Consequently, this issue is without merit.

## II. Jury Instructions

The Appellant alleges that "the trial court erred in its failure to instruct the jury on casual exchange." As noted by the State, the record before this court does not contain the jury instructions used in this case. When a party seeks appellate review there is a duty to prepare a record which conveys a fair, accurate and complete account of what transpired with respect to the issues forming the basis of the appeal. *State v. Ballard*, 855 S.W.2d 557, 560 (Tenn. 1993). Where the record is incomplete and does not contain a transcript of the proceedings relevant to an issue presented for review, or portions of the record upon which the party relies, an appellate court is precluded from considering an issue. *Ballard*, 855 S.W.2d at 560-61. Absent the necessary relevant material in the record an appellate court cannot consider the merits of an issue. *Id*. at 561 (citing Tenn. R. App. P. 24(b)). The Appellant's failure to include the jury instructions in the appellate record, therefore, precludes our consideration of this issue on appeal.

## III. Denial of Motion to Suppress

The Appellant argues that the warrantless search of his pants and buttocks area, which resulted in the seizure of a plastic bag containing cocaine, was constitutionally impermissible "in that it was more intrusive and evasive than a '*Terry* [s]earch' or a typical search incident to arrest." He argues that the trial court erred in denying his motion to suppress the seized evidence.

Our standard of review for a trial court's findings of fact and conclusions of law on a motion to suppress evidence was set forth in *State v. Odom*, 928 S.W.2d 18 (Tenn. 1996).

> Under this standard, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." [*Odom*, 928 S.W.2d] at 23. As is customary, "the prevailing party in the trial court is afforded the 'strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence.'" *State v. Carter*, 16 S.W.3d 762, 765 (Tenn. 2000) (quoting *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998)).

*State v. Cox*, 171 S.W.3d 174, 178-79 (Tenn. 2005). Nevertheless, we review *de novo* the trial court's application of the law to the facts, without according any presumption of correctness to those conclusions. *Id.* at 179 (citing *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001); *State v. Crutcher*, 989 S.W.2d 295, 299 (Tenn. 1999)).

"Both the state and federal constitutions offer protection from unreasonable searches and seizures; the general rule is that a warrantless search or seizure is presumed unreasonable and any evidence discovered is subject to suppression." *State v. Berrios*, 235 S.W.3d 99, 104 (Tenn. 2007). Our supreme court has recognized three categories of police interventions with private citizens: a full scale arrest, which requires probable cause; a brief investigatory detention, requiring reasonable suspicion of wrong-doing; and a brief police-citizen encounter, requiring no objective justification. *See id.* (citing *State v. Daniel*, 12 S.W.3d 420, 424 (Tenn. 2000)). Our supreme court has previously held that our state constitution offers more protection than the corresponding provisions of the Fourth Amendment. *See, e.g., State v. Jacumin*, 778 S.W.2d 430, 436 (Tenn. 1989); *State v. Lakin*, 588 S.W.2d 544, 549 (Tenn. 1979). "As under the federal constitution, evidence obtained as a result of a warrantless search or seizure 'is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement.'" *Berrios*, 235 S.W.3d at 105 (quoting *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997)).

One exception to the warrant requirement is a contemporaneous police search that follows a lawful arrest. *State v. Crutcher*, 989 S.W.2d 295, 300 (Tenn. 1999) (citing *Chimel v. California*, 395 U.S. 752, 762-63, 89 S. Ct. 2034, 2040 (1969)); *State v. Watkins*, 827 S.W.2d 293, 295 (Tenn. 1992)). When police officers make a lawful custodial arrest, they are permitted, as incident to the arrest, to search the person arrested and the immediately surrounding area. *Id.* (citing *Chimel*, 395 U.S. at 763, 89 S. Ct. at 2040). The rationale for those searches is the need

to disarm the arrestee in order to safely take him into custody, and the need to preserve evidence for later use at trial. *Id.* (citing *United States v. Robinson*, 414 U.S. 218, 234, 94 S. Ct. 467, 476 (1973)).

At the suppression hearing held in this case, the trial court heard testimony from Detective Goodwin and the Appellant, in addition to arguments of counsel, regarding the arrest and resulting search of the Appellant. In its oral ruling from the bench, the trial court denied the Appellant's motion to suppress, stating:

> Basically the argument based on this warrantless search is that – and, [defense counsel], . . . your supporting theory is that there was no reasonable suspicion, therefore, the plain feel, the plain touch – sort of a [*Terry*] search. Well, that's not this case. Clearly they had probable cause to arrest the defendant.
>
> Now, some of the body cavity search issues . . . basically where [the police] have no idea, and they do an invasive search. In this particular case they could clearly see [the] bag from where they were searching the defendant.

The evidence does not preponderate against the trial court's finding that the challenged search and seizure of the Appellant by police occurred incidentally to his arrest for sale of cocaine. We agree with the trial court's determination that the Appellant's reliance on *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868 (1968), is misplaced. Under the *Terry* stop exception to the search warrant requirement, a law enforcement officer may temporarily seize a citizen if the officer has a reasonable suspicion, based upon specific and articulable facts, that a criminal offense has been, is being, or is about to be committed. *See Terry*, 392 U.S. at 21, 88 S. Ct. at 1880; *State v. Keith*, 978 S.W.2d 861, 865 (Tenn. 1998). In the present case, a warrantless arrest occurred lawfully pursuant to Tennessee Code Annotated section 40-7-103, and was clearly based upon probable cause. The police lawfully seized the bag containing cocaine from the Appellant's buttocks area as it became visible, contemporaneously with his arrest. This search was permitted under a different exception to the warrant requirement, a search incident to arrest. *See Crutcher*, 989 S.W.2d at 300. Following review, we conclude that this issue is without merit.

## IV. Denial of Motion for Recusal

The Appellant, who identifies himself as "a Muslim man of color," contends that the trial court erred in its refusal to recuse itself from his trial for the underlying offenses, alleging bias held by the trial court toward him because of his color, nationality, and religion.

At a hearing on his motion for recusal, the Appellant testified regarding his allegations of discrimination by the trial court in a prior case. The Appellant testified that he intended to file a civil suit against the trial court based upon its alleged prejudice against him, and the crux of these assertions focused upon a prior case in which he had appeared before the trial court and ultimately entered a "best interest" plea and received probation. According to the Appellant:

The first time, I was late in court for like five minutes, right, and then Your Honor asked me to go get a piss test. I said no problem. I passed the piss test, you know, but there was a white guy that came [twenty] minutes later than me. She didn't say nothing [sic] to him. That made me very upset.

The Appellant further alleged that the trial court had later discriminated against him, after he violated probation, by ordering him to complete a particular drug treatment program which was not available at the facility where he was transferred. In summary, the Appellant testified:

In my eyes, I feel this Judge is discriminating against me, sending me to the wrong facility, and doing all kinds of stuff that I feel is racism . . . I feel . . . like I'm better off with a Judge that can deal with somebody with a mental health condition and can understand my problems and not judge me by my skin color or my religious beliefs.

The general rule is that a trial judge should recuse himself whenever he has any doubt as to his ability to preside impartially in a criminal case or whenever his impartiality can reasonably be questioned. *State v. Cash*, 867 S.W.2d 741, 749 (Tenn. Crim. App. 1993); *Lackey v. State*, 578 S.W.2d 101, 104 (Tenn. Crim. App. 1978). A judge is in no way disqualified because he tried and made certain findings in previous litigation. *King v. State*, 391 S.W.2d 637, 642 (Tenn. 1965). The matter of recusal is left to the sound discretion of the trial court and will not be reversed on appeal unless clear abuse appears on the face of the record. *State v. Boggs*, 932 S.W.2d 467, 472 (Tenn. Crim. App. 1996) (citing *Cash*, 867 S.W.2d at 749; *Caruthers v. State*, 814 S.W.2d 64, 67 (Tenn. Crim. App. 1991)).

The trial court denied the Appellant's motion for recusal. As to the Appellant's assertion that the trial court sent him to "the wrong facility," the trial court noted that such matters are controlled by the Sheriff's Department, rather than the trial court. Regarding the Appellant's religious beliefs, the trial court stated that it "had no idea what [his] religion is." The record does not preponderate against these findings. We further observe that no record of the prior proceedings appears in the record before this court. After review, we conclude that no abuse of discretion by the trial court appears on the face of the record. Accordingly, this issue is without merit.

## V. Sentencing

Finally, the Appellant appeals the length and manner of the sentences imposed by the trial court.

On appeal, the party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. *See* T.C.A. § 40-35-401, Sentencing Comm'n Comments. When a defendant challenges the length, range, or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that the determinations made by the court from which the appeal is taken are correct. T.C.A. § 40-35-401(d) (2005). The presumption of correctness is conditioned upon the affirmative

showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. *State v. Pettus*, 986 S.W.2d 540, 543-44 (Tenn. 1999). In this case, the record demonstrates that the trial court considered the sentencing principles and all relevant facts and circumstances in imposing the sentences.

When conducting a *de novo* review of a sentence, we must consider: (1) any evidence received at the trial and/or sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancement factors; (6) any statements made by the defendant on his or her own behalf; and (7) the potential for rehabilitation or treatment. T.C.A. § 40-35-210 (2005); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001).

At sentencing, the Appellant's presentence report was admitted into evidence, and the Appellant, who was thirty-four at the time of sentencing, offered lengthy testimony on his own behalf. The Appellant testified that he has a fiancée and two children. The Appellant detailed his previous work history as a driver for a parking lot and a taxi driver, and he more recently worked at Arby's restaurant and for a temporary labor company. He testified that he was twenty-eight years old when he began smoking crack cocaine and that he had been battling addiction for five years. He reported that he had completed drug treatment programs since his incarceration. The Appellant also claimed to be suffering from a mental condition that made it difficult for him to function without medication, and he further characterized his mental condition as "hav[ing] different personalities." The Appellant denied selling cocaine on the night of his arrest, claiming that the other occupant of the vehicle had sold the drugs to the criminal informant. He further maintained that the cocaine seized from his person was intended for his personal use.

### a. Sentence Lengths: The Weighing of Mitigating and Enhancement Factors

The Appellant argues that the trial court failed to give weight to mitigating factors and erred in the weight given to enhancement factors in determining the appropriate sentence lengths. He contends that the trial court attributed no weight to the mitigating factor that no weapon was used in the commission of the crimes or to the Appellant's alleged mental illness. The Appellant further argues that the trial court attributed too much weight to the enhancement factors that the Appellant had a previous history of criminal convictions or behavior in addition to those necessary to establish the appropriate range, a factor which he contends should have been afforded less weight considering his drug addiction and mental illness.

The Appellant executed a written waiver of his ex post facto rights to be sentenced under the pre-2005 sentencing provisions in effect at the time the offenses were committed, electing rather, to be sentenced under the June 7, 2005 sentencing amendments. The amended statute no longer imposes a presumptive sentence. *State v. Stacey Joe Carter*, No. M2005-02784, SC-R11-CD (Tenn. May 19, 2008). As further explained by our supreme court in *Carter*,

> the trial court is free to select any sentence within the applicable range so long as the length of the sentence is "consistent with the purposes and principles of [the

Sentencing Act].” [T.C.A.] § 40-35-210(d). Those purposes and principles include “the imposition of a sentence justly deserved in relation to the seriousness of the offense,” *id*. § 40-35-102(1), a punishment sufficient “to prevent crime and promote respect for the law,” *id*. § 40-35-102(3), and consideration of a defendant’s “potential or lack of potential for . . . rehabilitation,” *id*. § 40-35-103(5).

*Id*. (footnote omitted).

The 2005 Amendment to the Sentencing Act deleted appellate review of the weighing of the enhancement and mitigating factors, as it rendered these factors merely advisory, as opposed to binding, upon the trial court’s sentencing decision. Under current sentencing law, the trial court is nonetheless required to “consider” an advisory sentencing guideline that is relevant to the sentencing determination, including the application of enhancing and mitigating factors. The trial court’s weighing of various mitigating and enhancing factors is now left to the trial court’s sound discretion. *Id*. Thus, the 2005 revision to Tennessee Code Annotated section 40-35-210 increases the amount of discretion a trial court exercises when imposing a sentencing term. *Id*. If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after giving due consideration to the principles set out under sentencing law, and the trial court’s findings of fact are adequately supported by the record, then we may not disturb the sentence even if we would have preferred a different result. *State v. Pike*, 978 S.W.2d 904, 926-27 (Tenn. 1998).

The State argued application of the following enhancement factors: the Appellant has a previous history of criminal behavior in addition to those necessary to establish the appropriate range; the Appellant, before trial or sentencing, has failed to comply with the conditions of a sentence involving release into the community; and at the time the felony was committed, the Appellant was released on probation. *See* T.C.A. § 40-35-114 (1), (8), (13)(C) (2005). The defense submitted the following mitigating factors for consideration by the trial court: the defendant’s criminal conduct neither caused or threatened serious bodily injury, and the defendant was suffering from a mental or physical condition that significantly reduced his culpability for the offense. *See id*. § 40-35-113 (1), (8).

The trial court correctly noted that the Appellant had a prior felony conviction and several misdemeanor convictions, making enhancement factor (1) applicable. The trial court further applied enhancement factors (8) and (13), in light of the Appellant’s probation status when he was arrested on the charges underlying this appeal. The trial court stated that it placed great weight on factors (1) and (13). The trial court found only one mitigating factor applicable, that the Appellant’s conduct neither caused nor threatened serious bodily injury. The court proceeded to sentence the Appellant to ten years for the Class B felony conviction and five years for the Class C felony conviction.

Our review reflects that the trial court followed the statutory sentencing procedure, imposed appropriate sentence lengths after giving due consideration to the principles set out under sentencing law, and that the trial court’s findings of fact are adequately supported by the

record. Accordingly, as the weighing of the various factors is left to the trial court's discretion, we may not disturb the sentence. This issue is, therefore, without merit.

### b. Denial of Probation and Community Corrections

The Appellant argues that the trial court erred in refusing to allow him to serve his sentences on probation or community corrections. The Appellant submits that "he was once a hard working individual, who paid his bills and caused no problems in the community[. . .][b]ut because of his mental illness and drug addiction he became a different man."

Effective June 7, 2005, our legislature amended Tennessee Code Annotated section 40-35-102(6) by deleting the statutory presumption that a defendant who is convicted of a Class C, D, or E felony, as a mitigated or standard offender, is a favorable candidate for alternative sentencing options. Our sentencing law now provides that a defendant who does not possess a criminal history showing a clear disregard for the laws and morals of society, who has not failed past rehabilitation efforts, and who is an especially mitigated or standard offender convicted of a Class C, D, or E felony *should* be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary. T.C.A. § 40-35-102(5), (6) (2005) (emphasis added). The greater offense for which the Appellant was convicted is a Class B felony. Consequently, the Appellant is not considered a favorable candidate for alternative sentencing for this offense.

The trial court determined that although the Appellant was eligible for alternative sentencing options, such a sentence would not be appropriate in this case. The trial court based this determination on the Appellant's history of criminal behavior and his probation status at the time of his arrest, specifically finding that measures less restrictive than confinement had been frequently or recently applied unsuccessfully to the Appellant. Following *de novo* review, we conclude that the trial court's findings on this issue are supported by the record. Because the Appellant has failed to carry his burden of establishing that the sentences imposed are erroneous, no relief is warranted.

### CONCLUSION

Based upon the foregoing, the judgments of the Davidson County Criminal Court are affirmed.

_____
DAVID G. HAYES, SENIOR JUDGE