IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
May 18, 2004 Session

## STATE OF TENNESSEE v. KATHY E. COOPER

**Direct Appeal from the Circuit Court for Blount County**
**No. C-10576     D. Kelly Thomas, Jr., Judge**

_____

**No. E2003-01575-CCA-R3-CD - Filed September 20, 2004**

_____

The defendant appeals her resentencing following the revocation of her eight-year community corrections sentence for vehicular homicide, a Class B felony, arguing that the trial court erred in ordering her to serve twelve years in the Department of Correction, following her arrest for DUI. Based on the subsequent decision of the United States Supreme Court in Blakely v. Washington, 542 U.S. ___, 124 S. Ct. 2531 (2004), we remand this matter to the trial court for reconsideration in light of its holding.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JOE G. RILEY, JJ., joined.

Julie A. Rice, Knoxville, Tennessee (on appeal); Raymond Mack Garner, District Public Defender; and Stacey Nordquist, Assistant District Public Defender, Maryville, Tennessee (at trial), for the appellant, Kathy E. Cooper.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; Michael L. Flynn, District Attorney General; and Robert L. Headrick, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

On August 4, 1997, the Blount County Grand Jury indicted the defendant, Kathy E. Cooper, on one count of vehicular homicide by intoxication and one count of vehicular homicide by reckless driving based on a September 27, 1996, incident in which the intoxicated defendant caused a traffic accident that resulted in the death of her passenger, Danny Lee Walker. On January 26, 1998, the defendant pled guilty to vehicular homicide by intoxication, with the second count of the indictment

merged into the first, in exchange for an eight-year-sentence as a Range I, standard offender. Pursuant to the plea agreement, the manner of service of the sentence was left to the trial court's later determination.

The defendant testified at the April 20, 1998, sentencing hearing that she was single, 40 years old, and the mother of two children: twenty-one-year-old Chastity, who was married and had a fourteen-month-old child, and fourteen-year-old Kelly, who still lived at home. The defendant said she was physically and mentally disabled, received disability benefits, and did not work. She received regular counseling from a social worker and was under the care of a physician for her rheumatoid arthritis, which had resulted from the severe injuries, including multiple broken bones, she sustained in the accident. In addition, she would never again be able to hear out of her right ear and was unable to sleep at night because of recurring nightmares.

The defendant testified she was currently taking Diazepam, or Valium, Hydrocodone, and Prozac, was taking Diazepam and Prozac during the time the accident occurred, and had taken her prescribed medication before the accident. She conceded she had also drunk as many as four beers and smoked crack cocaine that the victim gave her. She said the accident occurred as she was giving the intoxicated victim a ride at night during a heavy rain. According to her testimony, she swerved onto the right shoulder and the victim grabbed the steering wheel from her, causing their head-on collision with a truck. The defendant acknowledged she had been intoxicated at the time of the accident but denied she had been speeding.

The defendant testified that the victim was her best friend and had told her he loved her right before the fatal accident. She said she had frequent nightmares about his death. She did not learn until after his death that he was married and had since that time contacted his wife and mother to apologize. The defendant asserted she had changed her life since the accident. She no longer drank or used illegal drugs, avoided the company of those who did, and regularly attended church. She said she was the only parent her younger daughter had and requested that the trial court award her probation so that she could remain home to support and care for her daughter. Among other evidence the defendant introduced was an eloquent letter from the victim's wife to the trial court, in which she requested that the defendant be granted probation with appropriate psychological, alcohol, and drug counseling in order to prevent the defendant's younger daughter from suffering the deprivation of a parent, as had the victim's two sons.

The defendant's daughters, Chastity Vananda and Kelly Cooper, each testified that the defendant had begun attending church and that they had observed a real change in her since the accident. Vananda described the defendant as a "wonderful mother" and said she had "straightened up a lot" and was "doing better for herself." Cooper, who said she had no father, testified that the defendant was spending time with her and was "just a lot better now." Finally, the defendant's pastor, Kenny Walker, testified that the defendant had begun attending his church regularly after the accident and that he believed her remorse and "change and commitment to Christ" were genuine.

At the conclusion of the hearing, the trial court imposed a sentence of split confinement, ordering that the defendant serve forty-seven days in the county jail and the balance of her eight-year sentence in a community corrections program. Among other factors the trial court considered and balanced to arrive at its sentencing determinations were the seriousness of the defendant's crime, her "almost non-existent" criminal history, the fact that rehabilitation efforts had never previously been unsuccessfully attempted with her, and her emotional and substance abuse problems, which the trial court found were treatable in the community.

On April 22, 2003, approximately five years into her sentence, the defendant was arrested for driving under the influence, and a community corrections violation warrant was subsequently issued. At the June 4, 2003, revocation and sentencing hearing, the defendant's community corrections officer, Patricia Ballard, testified that the defendant informed her office of her arrest. She said she was aware the defendant was taking "mood-altering substances" for pain and knew, as did the defendant, that the medications should not be combined with driving. However, the defendant had met all the conditions of her community corrections sentence prior to her DUI arrest, and Ballard therefore recommended leniency, suggesting that the defendant be placed on some sort of house arrest or electronic monitoring for a period of ninety days, while her medications were reevaluated in order to remove her from as many mood-altering substances as possible.

Alcoa Police Officer Rodney Wilson, who made the DUI arrest, testified he was working as a field training officer on the Alcoa Highway at approximately 5:20 p.m. when several callers reported the defendant's reckless driving to dispatch. The traffic was very heavy, and by the time he reached the defendant, she had already been involved in an accident. Officer Wilson identified the videotape of his interaction with the defendant, which was admitted as an exhibit to the hearing and played before the court. The videotape shows that the defendant was unable to stand without leaning against her vehicle for support and had great difficulty answering routine questions. In response to repeated queries, she informed the officer that she had taken four "Somas" and that the "Chastity Vananda" whose name appeared on the prescription bottle she had in her possession was her daughter. Officer Wilson testified that the defendant was, in his opinion, under the influence of narcotics at the time of her arrest. He acknowledged on cross-examination that neither the defendant nor the occupants of the second vehicle involved in the accident were injured, although there was extensive front-end damage to the defendant's vehicle.

Kelly Cooper, the defendant's younger daughter, testified she was nineteen years old and currently lived with her older sister but spent a lot of time with the defendant. She said the defendant had a driver's license, but she and her sister "usually [took] her places." She agreed the defendant was obviously impaired on the videotape but said it was not the "norm," and she had never before seen the defendant drive in that condition. Cooper testified her sister had a prescription for Soma, but she had never known her mother to take Chastity's medication.

The defendant testified that after the 1996 accident, her physician prescribed her Lortab, a pain medication, and Soma, a muscle relaxer, and her psychiatrist prescribed some medication as well. She acknowledged she took four Somas on the day of her DUI arrest, but insisted it was

prescribed and denied she took any of her daughter's medication. She said she was on her way to sit with the elderly grandmother of a diabetic friend, forgot she had taken her medication, and thought she was all right to drive. The defendant stated she wanted to be placed back on the community corrections program because Ballard had "helped [her] more than anything in the world." She testified she had realized, during the twenty-two or twenty-three days she had been without her pain medication in jail, that she could bear the pain without it and promised never again to take any pain medication or Soma.

At the conclusion of the hearing, the trial court revoked the defendant's community corrections sentence, finding that she had clearly violated its terms by her arrest for DUI. The trial court found no applicable factors in mitigation but found enhancement factor (9), the defendant has a previous history of unwillingness to comply with the conditions of release into the community, see Tenn. Code Ann. § 40-35-114(9) (2003), applicable based on the defendant's arrest for DUI. Moreover, because the behavior involved was so similar to that in the vehicular homicide, the trial court assigned this enhancement factor great weight. The trial court further found that a sentence less restrictive than confinement would depreciate the seriousness of the offense and that measures less restrictive than confinement had recently been applied unsuccessfully to the defendant. Accordingly, the trial court resentenced the defendant to twelve years in the Department of Correction, with credit for her prior jail service and time spent in the community corrections program.

## ANALYSIS

The sole issue the defendant raises on appeal is whether the trial court erred in resentencing her to twelve years in the Department of Correction following the revocation of her community corrections sentence "when she had been making excellent progress in her rehabilitation." The defendant concedes there was sufficient evidence to support the revocation of her community corrections sentence, but argues the trial court erred in its application of enhancement and mitigating factors when resentencing her to a longer term of confinement than the sentence originally imposed. Specifically, she contends that the court inappropriately based the application of enhancement factor (9) on the DUI arrest that occurred subsequently to the offense for which she was being sentenced and erroneously failed to consider or apply in mitigation the fact that the DUI, which was her first violation of her community corrections sentence, resulted from her use of prescription medication rather than illegal drugs or alcohol and evidenced a moment of poor judgment rather than a sustained intent to violate the law. The State argues that the record fully supports the trial court's sentencing determinations.

Upon revocation of a community corrections sentence, a trial court may resentence a defendant to any appropriate sentencing alternative, including incarceration, for any period of time up to the maximum sentence provided for the offense committed, as long as it gives the defendant credit for any time already served in any community-based alternative to incarceration. Tenn. Code Ann. § 40-36-106(e)(4) (2003). However, if the trial court resentences the defendant to a more severe sentence than originally imposed, it must conduct a sentencing hearing in accordance with

the Sentencing Act of 1989.  State v. Crook, 2 S.W.3d 238, 240 (Tenn. Crim. App. 1998) (citations omitted).  "The purpose of allowing the trial court to impose a new sentence is that the nature, circumstances and frequency of the defendant's violations may 'warrant a different type of alternative sentence or incarceration.'"  Id. (quoting State v. Ervin, 939 S.W.2d 581, 583 (Tenn. Crim. App. 1996)).  The trial court may not arbitrarily increase the length of the defendant's sentence and must state on the record its reasons for the sentence imposed.  See Tenn. Code Ann. §§ 40-35-209(c), -210(f)-(g); Ervin, 939 S.W.2d at 583.

When reviewing the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct."  Tenn. Code Ann. § 40-35-401(d) (2003).  This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances."  State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).  In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancement factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment.  Tenn. Code Ann. §§ 40-35-103, -210 (2003); State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001).  The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous.  Tenn. Code Ann. § 40-35-401 (2003), Sentencing Commission Cmts.; Ashby, 823 S.W.2d at 169.  Because the trial court in this case stated on the record its findings of fact in support of the sentence imposed, we review the defendant's sentence *de novo*, with a presumption of correctness afforded the trial court's sentencing determinations.

As a Range I offender convicted of a Class B felony, the defendant was subject to a sentence ranging from eight to twelve years.  Tenn. Code Ann. § 40-35-112(a)(2) (2003).  The sentence to be imposed for a Class B felony is presumptively the minimum in the range unless there are enhancement factors present.  Id. § 40-35-210(c). Procedurally, the trial court is to increase the sentence within the range based upon the existence of any applicable enhancement factors and then reduce the sentence as appropriate based on applicable mitigating factors.  Id. § 40-35-210(d), (e). The weight to be afforded an existing factor is left to the trial court's discretion so long as it complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record.  Id. § 40-35-210, Sentencing Commission Cmts.; State v. Moss, 727 S.W.2d 229, 237 (Tenn. 1986).

Upon resentencing, the trial court increased the defendant's sentence from the presumptive minimum sentence to the maximum sentence in the range based on the applicability of enhancement factor (9).  Although the trial court did not address the defendant's proposed mitigating factors explicitly, it did so implicitly by issuing the following ruling, explaining its sentencing determinations, immediately after defense counsel had concluded her argument for the applicability of the proposed mitigating factors:

Based upon the proof, the evidence is clear that [the defendant] has violated the terms of her Community Correction[s] agreement. I have listened to the testimony both days, considered that. I have also reviewed the court file and looked at the plea and the plea agreement.

I note that [the defendant] has somewhere in the neighborhood of five years credit against this sentence. And it was a range-one sentence. At the time that the judgment was signed, . . . there were no enhancing factors in the record. There is now. The enhancing factor that exists now is that [the defendant] has a history of unwillingness to comply with the conditions of release into the community.

Given the seriousness of the . . . charged offense of vehicular homicide, the nature of the violation of the rules of release - - that is, it's the same violation as in the original conviction, if not worse. I looked at the blood alcohol test. It was a .08. From the proof that I've seen today, your impairment out on the Alcoa Highway at 5:15 in the afternoon was greater than it was the day that you had this fatal wreck with a .08. . . . So, this enhancing factor weighs very, very heavily, in my judgment.

And so, in light of that enhancing factor, I am resentencing you from eight years to twelve years. You're still a range-one offender. You still have five years of jail credit and are eligible for release already. It will be up to the Probation and Parole Board. In deciding how the sentence is to be served, based on the evidence I've heard today and the evidence from the earlier sentencing agreement, a lack of confinement would depreciate the seriousness of the offense.

The sentence should have relationship to the seriousness of the crime and encourage rehabilitation. That was attempted and was successful for a period of time, and then totally violated by doing the same thing that led to the death of the victim in this case. And just by who knows what -- sheer luck or divine providence -- you or someone else wasn't killed out on the Alcoa Highway in rush hour traffic.

So, I think the potential of lasting rehabilitation at this point is poor. And one of the considerations in prison sentences is people have shown a failure of past efforts at rehabilitation. So, that is the reason.

The defendant asserts she had no "previous history of unwillingness to comply with the conditions of a sentence involving release into the community" at the time of the commission of her vehicular homicide, and contends that the trial court should not have based the application of enhancement factor (9) on the DUI that occurred while she was serving her community corrections sentence for that offense.

After the parties had submitted their briefs in this matter and oral arguments had been heard, the United States Supreme Court released its opinion in Blakely v. Washington, 542 U.S.___, 124 S. Ct. 2531 (2004), which held, in brief, that if a sentence is increased beyond its statutory maximum other than because of a prior conviction, the facts which are the basis for the increase must be determined by a jury beyond a reasonable doubt. Id. at ___, 124 S. Ct. at 2536. Accordingly, the parties were instructed to file supplemental briefs, explaining the effect, if any, of the Blakely decision on the present appeal. Only the State did so, and, in its supplemental brief, it took the position that the defendant had waived any sentencing claim as to Blakely by not making a timely claim pursuant to the holding in Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S. Ct. 2348 (2000), upon which the Blakely decision was based.

Absent the Blakely decision, our determination on appeal would have been whether the trial court erred in concluding that the defendant's DUI arrest, while in community corrections, could, itself, constitute a "previous history of unwillingness," which was the basis for the trial court's action resulting in this appeal. However, Blakely inserts the threshold determination, for the trial court as well as this court, whether a court or only a jury could find the defendant's conduct to be a "previous history." Since the trial court did not have the benefit of the Blakely holding, it did not make this determination, its resolution of which might have altered its taking action based upon the DUI arrest before that charge had been resolved. Presumably, that resolution has occurred during the appeal process. Given all of this, we believe that the most appropriate resolution of this matter is to remand to the trial court for reconsideration as to the matters set out in this opinion.

## CONCLUSION

Based upon the foregoing authorities and reasoning, we remand this matter to the trial court for reconsideration in light of the Blakely decision.

_____
ALAN E. GLENN, JUDGE