IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 17, 2018

**STATE OF TENNESSEE v. RICARDO ANTONIO DEMLING**

**Appeal from the Circuit Court for Bedford County**
**No. 18229     Franklin L. Russell, Judge**

_____

**No. M2017-00140-CCA-R3-CD**

_____

The Bedford County Grand Jury indicted the Defendant, Ricardo Antonio Demling, for theft of property valued between $10,000 and $60,000. The jury found the Defendant guilty as charged, and the trial court sentenced him to fifteen years as a Range III persistent offender and ordered this sentence to be served consecutively to any unexpired sentences. On appeal, the Defendant contends that the evidence was insufficient for a rational juror to have found him guilty beyond a reasonable doubt of theft of property between the value of $10,000 and $60,000. He also argues that his sentence was excessive and asks this court to conduct a plain error review of "all objections" and "all issues regarding venue and jurisdiction[.]" After a thorough review of the facts and applicable case law, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and TIMOTHY L. EASTER, J., joined.

M. Wesley Hall, IV, Unionville, Tennessee, for the appellant, Ricardo Antonio Demling.

Herbert H. Slatery III, Attorney General and Reporter; Richard D. Douglas, Assistant Attorney General; Robert J. Carter, District Attorney General; and Mike Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## I. Factual and Procedural History

*Jury Trial*

Roger Dale Smith testified that he owned Smith Equipment in Bedford County. Mr. Smith stated that, in 2009, Smith Equipment's main business was selling lawn mowers, lawn equipment, equipment parts, and utility vehicles. Smith Equipment was an authorized dealer for Cub Cadet Utility Vehicles. On September 27, 2009, Mr. Smith worked late at Smith Equipment and left around 10:30 p.m. The next morning, Mr. Smith arrived at his business around 7:30 a.m. and noticed that a yellow utility vehicle owned by Smith Equipment that had been parked in front of the business was missing. Mr. Smith testified that Smith Equipment purchased the utility vehicle for $7,600 and that the retail value of the utility vehicle was between $9,000 and $9,500. Mr. Smith and his employees checked the inventory of the business and discovered that a second utility vehicle had been stolen. Mr. Smith stated that the second utility vehicle "was parked on the back side of the building where it was[] basically . . . waiting to be serviced." Mr. Smith explained that a customer, Nathan Walker, owned the second utility vehicle, a green and black utility vehicle with accessories. Mr. Walker did not give anyone permission to remove his utility vehicle from the Smith Equipment property. Mr. Smith testified that Mr. Walker purchased his utility vehicle from Cub Cadet for $11,950 and that the utility vehicle retailed for between $14,000 and $15,000. Mr. Smith explained that the utility vehicles required keys to start and that Mr. Walker kept the key to his vehicle but that the key to the other vehicle was inside Smith Equipment.

Mr. Smith testified that each utility vehicle weighed approximately two thousand pounds and that two people could push a utility vehicle onto a trailer or that one person could use a winch to move a utility vehicle onto a trailer. When shown a photograph of the trailer on which the stolen utility vehicles were found, Mr. Smith noted that the trailer did not have a winch. Mr. Smith stated that he did not give the Defendant or co-defendant Marvin Summers permission to remove a utility vehicle from Smith Equipment. On cross-examination, Mr. Smith testified that Smith Equipment filed a claim for the stolen utility vehicles on its insurance policy and paid a $1,000 deductible. The insurance company reimbursed Smith Equipment for the cost of replacing Mr. Walker's utility vehicle. The insurance company later contacted Mr. Smith to inform him that law enforcement had found the stolen utility vehicles, which Mr. Smith turned over to the insurance company.

Benjamin Burris testified that he had worked for the Bedford County Sheriff's Office ("BCSO") for approximately ten years as a patrol officer. On September 28,

2009, Deputy Burris responded to Smith Equipment to fill out an incident report. Mr. Smith informed Deputy Burris that two utility vehicles had been stolen from Smith Equipment. After Deputy Burris obtained the vehicle identification numbers ("VINs") of the stolen utility vehicles, he gave his report to the Criminal Investigation Division of the BCSO. The VINs were later entered into the National Crime Information Center ("NCIC") database[1] as stolen property.

Trooper Willie Allison testified that he had worked for the Tennessee Highway Patrol ("THP") for approximately ten years. On September 28, 2009, Trooper Allison conducted a traffic stop in Clay County at 4:45 p.m. Trooper Allison stopped "a greyish and pink Suburban" with a trailer carrying a green utility vehicle and a yellow utility vehicle. He explained that he stopped the Suburban because the trailer lights were not operating correctly. As Trooper Allison approached the Suburban, he noticed that the vehicle had expired "dealer tags." Trooper Allison checked to see if the dealer tag belonged to the Suburban, and he found that Bridgett Allison owned the Suburban and that the dealer tag originated from a dealership in Nashville. Trooper Allison testified that co-defendant Summers was driving the vehicle and that the Defendant was in the passenger seat. Trooper Allison separated the Defendant and co-defendant Summers and asked them about the utility vehicles. Both individuals informed Trooper Allison that they had been hired to transport the utility vehicles from Shelbyville to Kentucky; however, they could not identify the individual who hired them to transport the items or where in Kentucky they were supposed to transport the vehicles. Trooper Allison noted that individuals who hauled vehicles for hire needed special tags on their vehicle and trailer and that the Defendant and co-defendant Summers did not have the required tags on their vehicle or their trailer. Trooper Allison also stated that the Defendant and co-defendant Summers did not have keys for the utility vehicles, bills of sale, or other proof of ownership.

On cross-examination, Trooper Allison explained that the Defendant and co-defendant Summers did not tell him that they had been hired to transport the utility vehicles to Celina after the owner's vehicle broke down in Lebanon. Trooper Allison checked the traffic log and did not find any log entry for a "motorist assist" for that day. Trooper Allison testified that he arrested co-defendant Summers for driving on a revoked license and transported him to the Clay County Jail. He was unsure of how the Defendant was transported to the jail.

Deputy Brian Ferris testified that in 2009, Deputy Ferris was a detective for the BCSO and was assigned to investigate the case against the Defendant and co-defendant

---

[1] Deputy Burris explained that NCIC is "a data base[] where stolen items go in, and if anything is ever ran in the future, it'll hit that it's stolen from our jurisdiction."

Summers. He examined Deputy Burris' report on the incident and then began "looking in familiar places for [the stolen utility vehicles]." He explained that his normal procedure was to contact investigators working in other counties to see if they were investigating any similar offenses. On November 9, 2009, THP informed the BCSO that the VINs of the stolen utility vehicles had been matched in a search on the NCIC database. Deputy Farris contacted Trooper Allison. Deputy Farris confirmed that the two utility vehicles found on the Defendant's trailer in Clay County were the same vehicles that were stolen from Smith Equipment in Bedford County.

Deputy Farris received photographs of the recovered utility vehicles from Troy Human, a sergeant in the Criminal Investigations Division of the THP, on November 13, 2009. He stated that either Trooper Allison or Sergeant Human informed him that the Defendant and co-defendant Summers had been stopped while transporting the stolen utility vehicles. Deputy Farris contacted the Regional Organized Crime Information Center to find the Defendant and co-defendant Summers so that he could interview them. Although he was unable to locate them, Deputy Farris applied for warrants for theft of property between the value of $10,000 and $60,000 against the Defendant and co-defendant Summers on January 14, 2010. In May or June 2015, the District Attorney General's Office informed Deputy Farris that the Defendant and co-defendant Summers had been arrested.

The Defendant did not testify. The jury found the Defendant guilty of theft of property between the value of $10,000 and $60,000.

*Sentencing Hearing*

At a sentencing hearing, the State introduced a copy of the Defendant's presentence report and certified judgments of conviction establishing the Defendant's prior convictions for the following felony offenses:

| Conviction Offense | Classification | Date of Conviction |
|---|---|---|
| Theft of property between the value of $10,000 and $60,000[2] | Class C felony | 09/26/2013 |
| Altering vehicle license plate | Class E felony | 08/20/2010 |
| Felony failure to appear | Class E felony | 04/19/2002 |

---

[2] The trial court did not consider this conviction and the Defendant's 2010 conviction for altering a vehicle license plate in its determination of the Defendant's range and offender classification because the underlying offenses occurred after the current offense.

- 4 -

| Possession of 0.5 grams or more of a Schedule VI controlled substance | Class E felony | 04/19/2002 |
|---|---|---|
| Possession of a Schedule II controlled substance, cocaine, for resale | Class B felony | 09/18/1998 |
| Theft of property between the value of $1,000 and $10,000 | Class D felony | 08/15/1996 |
| Attempted possession of a Schedule II substance, cocaine, for resale | Class C felony | 08/15/1996 |

The Defendant offered an allocution. He stated that he had a "bad history" but that he was "not that same person any[ ]more." The trial court found that several enhancement factors applied to the Defendant. The trial court found that the Defendant had a prior history of criminal convictions or criminal behavior in addition to that necessary to establish the range. *See* Tenn. Code Ann. § 40-35-114(1). The trial court noted that the Defendant committed two felonies after the current offense and had committed numerous misdemeanors. The trial court also found that, prior to his current trial or sentencing, the Defendant had been released into the community and had failed to comply with the conditions of that release. *See* Tenn. Code Ann. § 40-35-114(8). The trial court found that the Defendant's probation or parole had been revoked approximately twelve times. As a mitigating factor, the trial court found that the Defendant's offense had neither caused nor threatened serious bodily injury, *see* Tenn. Code Ann. § 40-35-113(1), but the trial court did not give this factor "significant weight." The trial court sentenced the Defendant as a Range III persistent offender to fifteen years with release eligibility after service of forty-five percent of the sentence. The trial court found that, because the Defendant's sentence was over ten years, the Defendant was not eligible for an alternative sentence. *See* Tenn. Code Ann. § 40-35-303(a). Further, the trial court stated that alternative sentencing was inappropriate in the Defendant's case because the Defendant violated the terms of his alternative sentences many times in the past. Thus, the trial court ordered the Defendant to serve his sentence in confinement.

The Defendant filed a motion for new trial, which the trial court denied on December 16, 2016. The Defendant now timely appeals.

## II. Analysis

*Sufficiency of the Evidence*

The Defendant argues that the State did not sufficiently establish his identity as the perpetrator of the theft. He also asserts that "[t]he description of the property was insufficient as a matter of law" and that the State did not establish a connection between Bedford County and the offense because "[o]ther than testimony from Trooper Allison[,]

who issued a citation to one of the defendants in Clay County, . . . there [wa]s no eye-witness testimony presented placing the defendants in Bedford County and in possession of the alleged stolen goods."

Our standard of review for a sufficiency of the evidence challenge is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see also* Tenn. R. App. P. 13(e). Questions of fact, the credibility of witnesses, and weight of the evidence are resolved by the fact finder. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh the evidence. *Id.* Our standard of review "is the same whether the conviction is based upon direct or circumstantial evidence." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)) (internal quotation marks omitted), 279 S.W.3d 265, 275 (Tenn. 2009)) (internal quotation marks omitted).

A guilty verdict removes the presumption of innocence, replacing it with a presumption of guilt. *Bland*, 958 S.W.2d at 659; *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The defendant bears the burden of proving why the evidence was insufficient to support the conviction. *Bland*, 958 S.W.2d at 659; *Tuggle*, 639 S.W.2d at 914. On appeal, the "State must be afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom." *State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007).

"A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103(a) (2009). Theft of property valued between $10,000 and $60,000 is a Class C felony. Tenn. Code Ann. § 39-14-105(4) (2009).

### *Identity of the Perpetrator*

The identity of the perpetrator is "an essential element of any crime." *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006). Identity may be established with circumstantial evidence alone, and the "jury decides the weight to be given to circumstantial evidence, and [t]he inferences to be drawn from such evidence . . . ." *Id.* (internal quotation marks omitted). The question of identity is a question of fact left to the trier of fact to resolve. *State v. Crawford*, 635 S.W.2d 704, 705 (Tenn. Crim. App. 1982).

Here, when the evidence is viewed in the light most favorable to the State, we conclude that a rational juror could have found that the Defendant was the perpetrator of

the theft of two utility vehicles from Smith Equipment beyond a reasonable doubt. When Trooper Allison stopped the Defendant and co-defendant Summers' vehicle because the brake lights on their trailer were not operating, the Defendant and co-defendant Summers were transporting two utility vehicles. The physical descriptions and VINs of the utility vehicles on the Defendant's trailer matched the description and VINs of the utility vehicles stolen from Smith Equipment. Additionally, Trooper Allison stopped the Defendant on the same day that Mr. Smith discovered that two utility vehicles had been stolen from Smith Equipment. It was the jury's prerogative to infer based on this evidence that the Defendant was the perpetrator of the theft from Smith Equipment. *See State v. Charles Bradley Mims*, No. W2015-02072-CCA-R3-CD, 2016 WL 3951742, at *4 (Tenn. Crim. App. July 19, 2016) (concluding that the evidence was sufficient to establish the identity of the defendant in part because the defendant was found with the stolen property shortly after its theft), *no perm. app. filed*.

### *Insufficient Property Description*

The Defendant appears to argue that the proof did not establish that the utility vehicles found on the Defendant's trailer were the same vehicles stolen from Smith Equipment. However, the evidence introduced at trial established that the description of the utility vehicles that Trooper Allison observed on the Defendant's trailer matched the description of the stolen utility vehicles provided by Mr. Smith. Additionally, Deputy Burris cross-checked the VINs of both vehicles with the VINs of the two stolen vehicles in the NCIC database and determined that they were a match. It was within the purview of the jury to infer, based on this circumstantial evidence, that the utility vehicles found on the Defendant's trailer were the same utility vehicles stolen from Smith Equipment.

### *Improper Venue*

"Because Article 1, Section 9 of the Tennessee Constitution gives a person accused of a crime the right to have a jury trial in the county in which the crime was committed, venue is considered a jurisdictional fact in a criminal prosecution." *Ellis v. Carlton*, 986 S.W.2d 600, 601 (Tenn. Crim. App. 1998) (citing *Harvey v. State*, 376 S.W.2d 497, 498 (Tenn. 1964); *Norris v. State*, 155 S.W. 165 (Tenn. 1913)). "It has thus been stated that the jurisdiction of the trial court is limited to the crimes which occur within the territorial boundaries of the county in which it sits." *Id.* (citing *State v. Hill*, 847 S.W.2d 544, 545 (Tenn. Crim. App. 1992)); *see also* Tenn. R. Crim. P. 18(a). The State has the burden of proving venue by a preponderance of the evidence. *Harvey*, 376 S.W.2d at 498. Venue may be proven by direct or circumstantial evidence, and "the jury is entitled to draw reasonable inferences from the evidence." *State v. Young*, 196 S.W.3d 85, 101-02 (Tenn. 2006).

Here, Mr. Smith testified that he owned Smith Equipment, which was located in Bedford County. Two utility vehicles were stolen from Smith Equipment; a yellow utility vehicle owned by Smith Equipment and a green and black utility vehicle owned by Mr. Walker. Trooper Allison stopped the Defendant and co-defendant Summers while they were transporting two utility vehicles that matched the description of the utility vehicles stolen from Smith Equipment: a green utility vehicle and a yellow utility vehicle. This evidence is sufficient for a rational trier of fact to infer that the Defendant stole property from Smith Equipment in Bedford County. The Defendant is not entitled to relief on this ground.

*Excessive Sentence*

The Defendant argues that "a sentence of fifteen years was not appropriate under the facts as stated in the record" because "the 'totality of the circumstances' was such that the [D]efendant submits that the sentence imposed is excessive and contrary to the law in this matter."

When the record establishes that the trial court imposed a sentence within the appropriate range that reflects a "proper application of the purposes and principles of our Sentencing Act," this court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)). The party challenging the sentence on appeal bears the burden of establishing that the sentence was improper. Tenn. Code Ann. § 40-35-401 (2009), Sentencing Comm'n Cmts.

In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made in the defendant's own behalf about sentencing. *See* Tenn. Code Ann. § 40-35-210(b) (2009); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. Tenn. Code Ann. § 40-35-103(5) (2009).

In determining a specific sentence within a range of punishment, the trial court should consider, but is not bound by, the following advisory guidelines:

(1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

(2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

Tenn. Code Ann. § 40-35-210(c) (2009).

Although the trial court should also consider enhancement and mitigating factors, such factors are advisory only. *See* Tenn. Code Ann. § 40-35-114 (2009); *see also Bise*, 380 S.W.3d at 699 n.33, 704; *State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008). We note that "a trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound discretion." *Carter*, 254 S.W.3d at 345. In other words, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" *Id.* at 343. A trial court's "misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Bise*, 380 S.W.3d at 706. "[Appellate courts are] bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." *Carter*, 254 S.W.3d at 346.

In this case, the trial court sentenced the Defendant, as a Range III persistent offender, to a term of fifteen years. On appeal, the Defendant does not challenge the trial court's finding that he is a Range III offender. Theft of property between the value of $10,000 and $60,000 is a Class C felony, *see* Tenn. Code Ann. § 39-14-105(a)(4) (2009), and as a Range III persistent offender, the Defendant's sentence range was ten to fifteen years. Tenn. Code Ann. § 40-35-112(c)(3) (2009). In determining the specific sentence within the range of punishment, the trial court found that the Defendant had a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range, *see* Tenn. Code Ann. § 40-35-114(1) (2009), and that the Defendant had failed to comply with the conditions of release into the community, *see* Tenn. Code Ann. § 40-35-114(8) (2009), and enhanced the Defendant's sentence accordingly. The Defendant's presentence report supports the trial court's application of

these enhancement factors. The trial court did not give significant weight to the mitigating factor that the Defendant's offense had neither caused nor threatened serious bodily injury, *see* Tenn. Code Ann. § 40-35-113(1) (2009). In any event, as previously noted, enhancement and mitigating factors are advisory only, and the trial court was "free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" *Carter*, 254 S.W.3d at 343. The trial court imposed a sentence within the appropriate range that reflects a proper application of the purposes and principles of sentencing; therefore, the trial court's sentencing determinations are entitled to a presumption of reasonableness. *Bise*, 380 S.W.3d at 707. The Defendant has not established that the trial court abused its discretion in sentencing the Defendant to fifteen years for theft of property between the value of $10,000 and $60,000.

### *Plain Error Review*

The Defendant additionally asks this court to conduct a plain error review of "all objections" and "all issues regarding venue and jurisdiction[.]" Tennessee Court of Criminal Appeals Rule 10(b) states that "[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." Tenn. Crim. App. R. 10(b); *see also* Tenn. R. App. P. 27(a)(7). This issue is waived because the Defendant failed to include any argument, citation to authorities, or references to the record.

### III. Conclusion

Based on the aforementioned reasons, we affirm the Defendant's conviction and sentence.

_____
ROBERT L. HOLLOWAY, JR., JUDGE