IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 21, 2018

## STATE OF TENNESSEE v. GREGORY LYNN KELLEY

**Appeal from the Circuit Court for Maury County**
**No. 25276     Stella L. Hargrove, Judge**

_____

### No. M2017-01158-CCA-R3-CD

_____

Defendant, Gregory Lynn Kelley, was indicted by the Maury County Grand Jury for one count of sale of more than 0.5 grams of methamphetamine, a Class B felony. Defendant pleaded guilty to the lesser-included offense of facilitation of the sale of methamphetamine over 0.5 grams, a Class C felony. Following a sentencing hearing, the trial court sentenced Defendant as a Range II offender to serve eight years and six months in the Tennessee Department of Correction. Defendant contends on appeal that the trial court abused its discretion when it denied Defendant's request to serve his sentence on probation. Having reviewed the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and CAMILLE R. MCMULLEN, JJ., joined.

Brandon E. White, Columbia, Tennessee (on appeal); and Claudia S. Jack, District Public Defender; and Kendall Fisher Stivers, Assistant Public Defender, Columbia, Tennessee, for the appellant, Gregory Lynn Kelley.

Herbert H. Slatery III, Attorney General and Reporter; Linda D. Kirklen, Assistant Attorney General; Brent A. Cooper, District Attorney General; and Patrick Powell, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

*Sentencing hearing*

Gena Caldiraro, an employee of the Tennessee Department of Correction, testified that she interviewed Defendant in jail to prepare a risk assessment for the presentence report. She testified that Defendant's "risk level would be high" based on Defendant's

prior criminal history. She testified that Defendant's score would require him to report as a maximum offender several times per month. Defendant scored low risk in the "friends" category because he reported that he had friends who were positive influences. He scored moderate risk in the education category because he did not graduate from high school or obtain his G.E.D. He scored high risk in the mental health category.

Defendant testified at the sentencing hearing. He agreed that he was a Range II offender based on his criminal history and that his "punishment level goes up." Defendant testified that he pleaded guilty to aggravated assault in Maury County in 1991 when he was 20 or 21 years old. He received a sentence of three years suspended on probation. Defendant testified that he successfully completed probation but that he believed his probation period was extended in order to allow him more time to pay fines. He also pleaded guilty in 2008 in Giles County to facilitation of the sale of Xanax and was sentenced to four years suspended on probation. Defendant testified that he "might have violated [probation] one time for failure to report[,]" but he could not recall.

Defendant testified that he had "an on-and-off battle with drugs pretty much all [his] life." Defendant testified that he was bipolar and that he had attempted suicide and "been in a couple of mental hospitals." Defendant testified that medication helped with his violent temper and anxiety.

Defendant gave his version of the events surrounding the offense to which he pleaded guilty. Defendant denied that he sold methamphetamine. He testified that he was asked by an acquaintance (the confidential informant (C.I.) working for law enforcement) to get drugs for him, and Defendant repeatedly refused. Defendant testified that a friend of his overheard his phone call and offered to get drugs for the C.I. Defendant arranged to meet the C.I. at Shoney's. Defendant testified that he stayed outside while his friend (the C.I.) "went inside and did what he had to do [and] came back." Defendant told the friend that he did not want any drugs or money from the transaction, and Defendant took him back to his car. The friend's car had a flat tire, so Defendant allowed him to borrow his truck. Defendant testified his friend "took the drugs back to the Drug Task Force, and that's all I know." Defendant admitted that he facilitated the drug sale.

Defendant testified that he installed drywall for 25 years, but he was receiving disability for a shoulder injury. He testified if he was granted probation, he "would be on disability until [his] shoulder [wa]s fixed and . . . then [he] would go back to work." Defendant testified that he had tumors in his neck that needed to be removed. Defendant testified that having been in jail had "taught [him] a lesson[,]" and he believed he would be successful on probation. He testified that he would "[s]tay clean" and report as directed.

On cross-examination, Defendant testified that he was 47 years old. He testified that his drug use was "mostly recreational [and] not every day." Defendant acknowledged that he had been given probation for his aggravated assault conviction when he was 20 years old. He also acknowledged that he had been caught "quite a few times" driving on a revoked license. Defendant admitted that he had been on probation 15 times, but he was "only violated three of those or four of those."

At the conclusion of the sentencing hearing, the trial court found that Defendant had an extensive criminal history, including 13 prior convictions. The court noted, "since age 20, [Defendant] has found a way to stay in the Criminal Justice System one way or another." Additionally, the trial court found that Defendant "has been given numerous chances to stay out of jail; stay on probation; stay away from drugs; stay away from his friends. And today, the stakes are high, because he has not done that. This is his fault." The trial court noted that Defendant's probation had been revoked previously and that Defendant "had difficulty abiding by the rules of probation." The trial court found Defendant was not credible, noting that his testimony at the sentencing hearing contradicted the information he gave the preparer of his presentence report.

The trial court applied two enhancement factors: Defendant had a previous history of criminal convictions in addition to those necessary to establish the range; and previous efforts at release in the community were unsuccessful. *See* T.C.A. § 40-35-114(1) and (8). The trial court found that incarceration was needed to protect society and deter others and that a sentence of full probation would depreciate the seriousness of the offense, noting that methamphetamine use was "a real problem" in light of the number of arrests and convictions in recent years. The trial court sentenced Defendant to eight and one-half years in confinement and ordered Defendant to pay a $2,000 mandatory minimum drug fine.

*Analysis*

Defendant contends that the trial court abused its discretion when it denied his request for alternative sentencing and ordered him to serve his sentence in confinement. The State argues that the trial court properly sentenced Defendant. We agree with the State.

When the record establishes that the trial court imposed a sentence within the appropriate range that reflects a "proper application of the purposes and principles of our Sentencing Act," this court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). A finding of abuse of discretion "'reflects that the trial court's logic

and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)). In *State v. Caudle*, 388 S.W.3d 273, 278-79, the supreme court expanded its holding in *Bise* to trial courts' decisions regarding alternative sentencing.

The party challenging the sentence on appeal bears the burden of establishing that the sentence was improper. T.C.A. § 40-35-401 (2017), Sentencing Comm'n Cmts. In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made in the defendant's own behalf about sentencing. *See* T.C.A. § 40-35-210 (2017); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. T.C.A. § 40-35-103 (2017).

Under Tennessee Code Annotated section 40-35-103, the trial court should look to the following considerations to determine whether a sentence of confinement is appropriate:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

T.C.A. § 40-35-103(1) (2017).

As a Range II multiple offender convicted of a Class C felony, Defendant was eligible for alternative sentencing but he was not considered a favorable candidate for alternative sentencing. *See* T.C.A. §40-35-303(a), §40-35-102(6). The record shows that the trial court considered the purposes and principles of sentencing as well as the factors

relevant to imposing a sentence of confinement. The record supports the trial court's findings that Defendant had an extensive history of criminal offenses and that measures less restrictive than confinement had on multiple occasions been unsuccessfully applied to Defendant. The trial court denied Defendant's request for an alternative sentence based upon the need to avoid depreciating the seriousness of the offense and the need for deterrence. *See id*. § 40-35-103(1)(B). Defendant has not demonstrated that the trial court abused its discretion by denying him an alternative sentence.

## CONCLUSION

The trial court did not abuse its discretion when it denied Defendant's request for an alternative sentence. Accordingly, we affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, JUDGE