FILED

11/12/2019

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs April 23, 2019

## STATE OF TENNESSEE v. RICHARD EARNEST WILLIAMS

**Appeal from the Circuit Court for Lincoln County
Nos. 17-CR-145, 17-CR-146, 17-CR-147        Forest A. Durard, Jr., Judge**

_____

### No. M2018-01361-CCA-R3-CD
_____

Defendant, Richard Earnest Williams, entered open pleas of guilty to the charges in three separate indictments. He pled guilty to three counts of aggravated burglary, a Class C felony, four counts of theft over $10,000, a Class C felony, two counts of theft more than $2,500 but less than $10,000, a Class D felony, three counts of vandalism, a Class E felony, and one count of reckless aggravated assault, a Class D felony. In Case No. 17-CR-145, the trial court imposed a sentence of fifteen years as a persistent offender for aggravated burglary, fifteen years as a persistent offender for each count of theft over $10,000, and twelve years as a career offender for vandalism, and twelve years as a career offender for reckless aggravated assault. In Case No. 17-CR-146, the trial court imposed a sentence of fifteen years for aggravated burglary as a persistent offender, twelve years for each count of theft more than $2,500 but less than $10,000 as a career offender, and six years for vandalism as a career offender. In Case No. 17-CR-147, the trial court imposed a sentence of fifteen years as a persistent offender for aggravated burglary, twelve years as a career offender for each count of theft more than $2,500 but less than $10,000, and six years as a career offender for vandalism. The trial court merged the two theft convictions in each case into one count because they involved alternate theories of committing the offense. The trial court ordered the counts in each case to run concurrently with each other but consecutively to the other cases for an effective forty-five-year sentence to be served in confinement. On appeal, Defendant challenges the length of his sentences. Upon reviewing the record and the applicable law, we affirm the judgments of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed

THOMAS T. WOODALL, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and ROBERT H. MONTGOMERY, JR., JJ., joined.

Donna Orr Hargrove, District Public Defender; and William J. Harold, Assistant Public Defender, Lewisburg, Tennessee, for the appellant, Richard Earnest Williams.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Assistant Attorney General; Robert James Carter, District Attorney General; and Ann Filer, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Background*

The facts of Case Nos. 17-CR-145 and 17-CR-146 as set forth by the State at the guilty plea submission hearing are as follows:

> [O]n July 20th, 2017, officers responded to 2633 Huntsville Highway. That is here in Lincoln County. The victim in this case is Peggy McAlister. She had reported that her back door had been kicked in. She went through and showed officers things that had been ransacked and things that were missing. She gave a detailed description of the property that was missing. It was about $8,000 in stolen property. Damage was about $415.11. There was a dresser that was also damaged. She was very specific as far as the items of jewelry that had been taken.
>
> About a week later, officers responded on July 27th to another residence. This was 45 Highland Rim Road. The victim here was Brenda Pierce. At this particular place, a neighbor confronted the defendant. Deputies responded, talked with James Ron Cantrell that lived next door to the 45 Highland Rim Road Address. He was able to identify the defendant and then indicated that he did drop some jewelry as he was leaving the residence.
>
> The sheriff's department posted the pictures that the neighbor had been able to take of the defendant on the Lincoln County Sheriff's Department Facebook page and some community members were able to identify the defendant. He was later arrested and agreed to talk with investigators.
>
> In this interview, after waiving his Miranda rights, he did admit to actually three burglaries and identified the jewelry that had been taken[.]

The prosecutor noted that on Ms. McAlister's case, the total on the theft by Defendant was $8,000, and the vandalism was $3,317.73. On Ms. Pierce's case, the total on the theft by Defendant was $10,650 and $3,441.12 on the vandalism.

The facts of Case No. 17-CR-147, as recited by the State at the guilty plea submission hearing, are as follows:

This came to the attention of law enforcement on July 26th of 2017 when Mr. Mark Mitchell came to the sheriff's department - - or contacted the sheriff's department to report that his home at 8 Burning Tree Lane here in Lincoln County had been broken into and items taken on July 24th, some time between 1:00 in the afternoon and 4:40 in the afternoon. Entry had been made through a back door by breaking out the glass. Mr. Mitchell had first noted that several items in the master bedroom were out of place and he initially contacted his wife to see if maybe she had moved some things around but found out she had not. And in the meantime, he noticed that his wife's jewelry box and a pillow case, which had apparently been taken as a place to collect items of jewelry that were being taken, were missing.

Upon further investigation, Mr. Mitchell noted that the door going into the garage area of the home was open as well as two exterior doors, one of which was the apparent point of entry with the broken glass that I mentioned before.

Items reported stolen from the Mitchells included a large number of items of jewelry and a jewelry box and a one year old Yorkie, or Yorkshire Terrier. And the little dog was valued at approximately $700. Of course it was invaluable to the Mitchells, but in terms of its market value, it was about $700. And a large number of items of jewelry were also taken.

And this is where this will sort of intersect with what General Sandoval has already explained. And that is that on 7/27, there was a burglary in progress reported on Highland Rim Road, which is one of the residences already referenced. A neighbor of that homeowner, a Mr. James Cantrell, had confronted the burglar and was able to get several photographs of him and his vehicle, which was a white Chevy Malibu. And Investigator Massey then posted those pictures on the sheriff's department Facebook page. A citizen who had seen those pictures on Facebook in turn saw [Defendant] there at Walmart and the Murphy oil station there on the Walmart premises and notified law enforcement.

Deputies responded and took [Defendant] into custody without incident. He was still wearing the same clothing and driving the same car that he had been at the time that Mr. Cantrell photographed him. A piece of broken glass and pieces of jewelry were recovered from his shirt pocket.

An inventory was done of the vehicle before it was towed. More jewelry was found inside the vehicle.

The car owner, Alicia Wagner, was notified. And it turned out that she was someone [Defendant] had been seeing socially for approximately two weeks at that time and he did have permission to be using her car but not, obviously, to commit felonies.

Ms. Wagner came to the sheriff's department and brought with her two jewelry boxes containing pieces of jewelry that she said [Defendant] had brought to her home and she didn't know where he had obtained them.

She gave permission, both in writing and orally, for investigators to further inspect the inside of her car and also look inside her home. And in the course of doing that, they recovered several additional items of jewelry from both the car and her house.

The jewelry that had been collected by law enforcement was shown to Mr. Mitchell. He was able to identify some of it but his wife could positively identify several additional items. And the other victims in the previous cases just described were able to identify some of it.

[Defendant] was initially interviewed, Mirandized, and an interview was started. He denied the burglaries. Then subsequently, he made a written request to speak with law enforcement. And law enforcement made certain that he wanted on his own to initiate conversing with them. And he put that in writing. And spoke further with them and ultimately admitted to having committed all three of the aggravate[d] burglaries, including specifically having taken the little dog.

The prosecutor also noted that Defendant attempted to run down Mr. Cantrell with his vehicle once Defendant realized that Mr. Cantrell had discovered him and was taking photographs. Mr. Cantrell "suffered a shoulder injury and underneath his upper arm where he grabbed the mirror and [Defendant] continued driving with Mr. Cantrell holding the mirror. And he also had abraded knees."

*Sentencing Hearing*

The presentence report was admitted as an exhibit at the sentencing hearing with the victim impact statements incorporated into the report. The forty-nine-year-old Defendant has a criminal history dating back to 1994 with convictions in states including Tennessee, Alabama, and Florida. Defendant has four prior felony convictions for theft of property, a conviction for felony escape, six prior convictions for burglary, and a

conviction for possession of cocaine. He also has prior misdemeanor convictions for failure to appear, two theft convictions, and possession of drug paraphernalia. The presentence report reflects that Defendant's parole in Hamilton County was revoked on October 25, 2017, and his probation was revoked in Jefferson County, Alabama, on April 27, 2006, in Bay County, Florida, on August 27, 1998, and in Tuscaloosa County, Alabama, on April 18, 2001.

James Cantrell, sixty-nine years old, testified that he had just returned home from taking his wife to a doctor's appointment when he heard a "loud thud and a noise." He thought that his wife had fallen to the floor and went to check on her but she was sitting on the couch. Mr. Cantrell then thought the noise may have come from outside. He walked around outside and saw Defendant walking out the back door of Mr. Cantrell's neighbor's house, and he yelled for Defendant to stop. Defendant was carrying a jewelry armoire, and when Defendant stopped, the drawers slid out of the armoire, and jewelry was scattered all over the back yard. Mr. Cantrell yelled for Defendant to stop, but Defendant ran and got into a car, which did not have a license plate. Mr. Cantrell pulled out his cell phone and began taking pictures of the vehicle. He attempted to pull the keys out of the car's ignition but Defendant drove away dragging Mr. Cantrell down the driveway causing him some injuries. Mr. Cantrell noted that Defendant had a long criminal history and requested that the trial court sentence Defendant to the maximum sentence.

The trial court determined that based upon Defendant's twelve prior felony convictions, Defendant was a Range III persistent offender for his Class C felonies and a career offender for the Class D and E felonies.

*Analysis*

Defendant argues that his sentence is "excessive and contrary to law." More specifically, he contends that the weight given to the enhancement factors was inappropriate due to Defendant's "long-term drug issues" and that it would have been more appropriate for the "Court to sentence [Defendant] to concurrent sentencing, or, in the alternative, a shorter sentence in the range, between 10 and 12 years, for his class C felonies, with only two convictions being consecutive, for a total of 24 years." We disagree.

Our standard of review of the trial court's sentencing determinations is whether the trial court abused its discretion, and we apply a "presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The party challenging the sentence on appeal bears the burden of establishing that the sentence was improper. T.C.A. § 40-35-401 (2017), Sentencing Comm'n Cmts. In determining the proper sentence, the trial court must consider: (1) the evidence, if any,

received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement the defendant made in the defendant's own behalf about sentencing; and (8) the result of the validated risk and needs assessment conducted by the department and contained in the presentence report. *See* T.C.A. § 40-35-210; *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. T.C.A. § 40-35-103 (2017).

Trial courts are "required under the 2005 amendments to 'place on the record, either orally or in writing, what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing.'" *Bise*, 380 S.W.3d at 698-99 (quoting T.C.A. § 40-35-210(e)). Under the holding in *Bise*, "[a] sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10.

With respect to consecutive sentencing, our supreme court has held that the standard of review adopted in *Bise* "applies similarly" to the imposition of consecutive sentences, "giving deference to the trial court's exercise of its discretionary authority to impose consecutive sentences if it has provided reasons on the record establishing at least one of the seven grounds listed in Tennessee Code Annotated section 40-35-115(b)[.]" *State v. Pollard*, 432 S.W.3d 851, 861 (Tenn. 2013). Tennessee Code Annotated section 40-35-115(b) provides that a trial court may order sentences to run consecutively if it finds any one of the following criteria by a preponderance of the evidence:

> (1) The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;
> (2) The defendant is an offender whose record of criminal activity is extensive;
> (3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;
> (4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

T.C.A. § 40-35-115(b). In *Pollard*, the court reiterated that "[a]ny one of these grounds is a sufficient basis for the imposition of consecutive sentences." 432 S.W.3d at 862. "So long as a trial court properly articulates its reasons for ordering consecutive sentences, thereby providing a basis for meaningful appellate review, the sentences will be presumed reasonable and, absent an abuse of discretion, upheld on appeal." *Id.*; *Bise*, 380 S.W.3d at 705.

Here the record reflects that the trial court in sentencing Defendant applied four enhancement factors: Defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range; the offense involved more than one victim; Defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community; and at the time the felony was committed, Defendant was on parole. T.C.A. § 40-35-114(1), (3), (8), and (13)(B). The trial court noted that it gave the greatest weight to enhancement factor number one due to Defendant's twelve prior felony convictions. Defendant does not challenge the enhancement factors, and the record reflects that they were appropriately considered. The trial court also found as mitigating factors that Defendant's criminal conduct neither caused nor threatened serious bodily injury, but only as applied to the theft and vandalism convictions; and Defendant, by pleading guilty, saved the costs of multiple trials and spared the victims from having to testify. T.C.A. § 40-35-113 (1) and (13). The trial court gave very little weight to mitigating factor thirteen.

Defendant faced a sentencing range of ten to fifteen years as a Range III, persistent offender for each Class C felony. T.C.A. §§ 40-35-107(c) and 40-35-112(c)(3). The trial court imposed the statutorily mandated Range III sentence of twelve years as a career offender for each Class D felony and the statutorily mandated Range III sentence of six years for each Class E felony with sixty percent release eligibility. T.C.A. §§ 40-35-108(c), 40-35-112(c)(4)-(5); and T.C.A. § 40-35-501(e). Having reviewed the record before us, we conclude that the trial court clearly stated on the record its reasons for the sentences imposed, and all of Defendant's sentences are within the appropriate ranges. The record reflects that the trial court considered the purposes and principles of the Sentencing Act. Therefore, the trial court's imposition of the maximum sentences of

fifteen years as a Range III, persistent offender, for Defendant's Class C felony offenses is presumed reasonable.

> As for partial consecutive sentencing, the trial court in this case found:

> One that nobody brought up was the first one, which is defendant is a professional criminal who has knowingly devoted his life to criminal acts as a major source of his livelihood.

> Now sometimes the trial courts get themselves in trouble I think on that for not sufficiently articulating on the record the application of why they applied that particular factor. In this situation, I do think it applies. If you look at the presentence report, [Petitioner] has an abysmal record and it mainly deals with stealing. Breaking in somewhere to steal something. He has a number of felony theft convictions and a few misdemeanor convictions. On top of that, further back in the presentence report, there is virtually no employment history hardly at all that one could possibly sustain themselves during this period of time. I think that [Petitioner], at least as far as the presentence report is concerned, goes back to age – about age 25 when he committed his - - when he was convicted of committing his first burglary, and that was in Tuscaloosa County, Alabama in 1994. [Petitioner] is now twice that age and is still doing this. So for a quarter of a century, he has been breaking into places and stealing. And obviously for his own gain.

> Now I think that applies as far as consecutive sentencing, but I think between that and the second one, which is an offender whose record of criminal activities is extensive, that certainly goes without saying here that [Petitioner] has a very extensive criminal history in this situation. It says criminal activity. Of course obviously convictions would be evidence of activity.

> So I think both of those apply. I would certainly give a much greater weight to the second one being his extensive criminal history or activity. I don't think any other remaining ones apply.

*See* T.C.A. § 40-35-115(b)(1)-(2). Defendant does not challenge the two factors applied by the trial court to support partial consecutive sentencing. He asserts that the trial court should have ordered concurrent sentencing or in the alternative ordered the sentences in two of the cases to be served consecutively rather than in all three cases.

However, the record supports the partial consecutive sentences imposed by the trial court. As set forth above in this opinion, the forty-nine-year-old Defendant has a

criminal history dating back to 1994 with convictions in states including Tennessee, Alabama, and Florida. Defendant has four prior felony convictions for theft of property, a conviction for felony escape, six prior convictions for burglary, and a conviction for possession of cocaine. He also has prior misdemeanor convictions for failure to appear, two theft convictions, and possession of drug paraphernalia. The trial court did not abuse its discretion by imposing partial consecutive sentencing.

Defendant argues that his "long-term drug issues" necessitate a lesser sentence in this case. However, there is nothing in the record to show that Defendant has sought any treatment for his alleged drug addiction despite opportunities to do so or that all of his crimes were committed as a result of his drug addiction. As pointed out by the trial court at the sentencing hearing, Defendant's prior criminal history demonstrates a "total lack of the ability to be rehabilitated." We conclude the trial court did not err when it imposed an effective forty-five-year sentence. Defendant is not entitled to relief.

## CONCLUSION

Based upon the foregoing analysis, the judgments of the trial court are affirmed.

_____
THOMAS T. WOODALL, JUDGE