IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
November 9, 2021 Session

**STATE OF TENNESSEE v. JEROME ANDRE MCCLINTON**

**Appeal from the Criminal Court for Putnam County**
**No. 2018-CR-519    Wesley Thomas Bray, Judge**

_____

**No. M2021-00031-CCA-R3-CD**

_____

Defendant, Jerome Andre McClinton, pled guilty to one count of sale of more than 0.5 grams of methamphetamine. Pursuant to his plea agreement, the manner of service of his ten-year sentence was to be determined by the trial court. Following a sentencing hearing, the trial court ordered the sentence to be served in confinement. On appeal, Defendant contends that the trial court abused its discretion by ordering him to serve his sentence without considering his amenability to correction or potential for rehabilitation. Following a thorough review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and J. ROSS DYER, JJ., joined.

Brian D. Wilson (on appeal), Assistant Public Defender–Appellate Division; Craig Fickling, District Public Defender; Tyler Lannom and Shannon Poindexter (at plea and sentencing), Assistant District Public Defenders, for the appellant, Jerome Andre McClinton.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Senior Assistant Attorney General; Bryant C. Dunaway, District Attorney General; and Mark Gore and Evan R. Smith, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**Factual and Procedural History**

The Putnam County Grand Jury indicted Defendant for two counts of sale or delivery of less than 0.5 grams of methamphetamine and two counts of sale or delivery of

more than 0.5 grams of methamphetamine. Pursuant to a plea agreement, Defendant pled guilty to one count of sale of more than 0.5 grams of methamphetamine, a Class B felony. The plea agreement provided for a "hybrid" sentence: Defendant received a Range I sentence of ten years coupled with a Range II release eligibility of thirty-five percent. The manner of service was reserved for the trial court to determine at a sentencing hearing.

During the guilty plea submission hearing, the State summarized the facts of the case as follows:

> [On] October 5th, 2017[,] the Cookeville Police Department utilized a confidential source to purchase drugs at an apartment [on] Texas Avenue here in Putnam County. At that location the confidential source was able to purchase and [D]efendant sold and delivered an amount of methamphetamine through the confidential source. The source then met back up with law enforcement and ended up with the evidence. The evidence was then sent to the TBI where it was determined to be methamphetamine. The weight was point seven five grams.
>
> And . . . capturing the events of this drug transaction, law enforcement was able to obtain audio of the drug buy.

Defendant agreed that the ten-year sentence would run consecutively to an unrelated sixteen-year sentence, and his plea paperwork acknowledged that the plea would "add ten years to the sixteen[-]year sentence." Based on Defendant's guilty plea, the State dismissed Defendant's remaining charges.

At a subsequent sentencing hearing, Courtney Gelinas testified that she was employed as a probation officer at the Tennessee Department of Probation and Parole. Ms. Gelinas stated that she prepared Defendant's presentence report, which was admitted as an exhibit to her testimony without objection. She explained that forty-eight-year-old Defendant had multiple prior convictions dating back to 1991, when he was nineteen years old. According to Ms. Gelinas and the presentence report, Defendant's criminal record included convictions for sale of over 0.5 grams of methamphetamine, sale of less than 0.5 grams of methamphetamine, possession of a Schedule VI drug with intent to sell, two counts of driving on a revoked license, failure to maintain a lane, DUI, eight counts of simple possession of drugs, malicious mischief, criminal trespass, nineteen counts of shoplifting, and convictions for first degree burglary and felony theft out of New Jersey. Ms. Gelinas testified that Defendant had three prior probation violations for failure to report to jail, absconding from his known residence, and failing to make regular payments of court costs. She explained that Defendant had served multiple sentences in jail and had been previously ordered to undergo alcohol and drug treatment and assessments. Ms.

Gelinas also confirmed that Defendant was on probation at the time he committed the instant offense. She stated that Defendant underwent a Strong-R assessment, which found that Defendant had a high likelihood of re-offending with drugs. In the presentence report, Defendant admitted to previous use of marijuana and cocaine.

On cross-examination, Ms. Gelinas agreed that many of Defendant's prior convictions listed in the presentence report were for misdemeanors. Ms. Gelinas conceded that Defendant's incarceration would limit the outside drug rehabilitation resources he could obtain. She further noted that the presentence report indicated that Defendant was legally blind.

Linda Barker testified that her grandson had been roommates with Defendant in the Putnam County Jail two to three years prior. She explained that, while they were in jail, Defendant encouraged her grandson to seek treatment for drug abuse. Ms. Barker testified that "by constantly talking to him about religion, about God, about a better way and changing his life for good[,]" Defendant "got through to [her grandson]" when others could not. Ms. Barker stated that her grandson attended a treatment facility in Memphis after his release from jail and later found stable employment. She said that Defendant had continued to check in with her and her grandson about once a month, and she opined that, without Defendant's encouragement, her grandson would "would probably be dead by now." Ms. Barker further said that, through his experience of supporting her grandson, Defendant "seem[ed] to have changed a lot of his attitudes about things[.]" She stated she believed that, if Defendant had an opportunity for treatment, "he would take full advantage of it and would probably try to help others, keep other kids from making the same mistakes he made."

Niki Payne testified that she originally met Defendant in 2018 when she was a Senior Recovery Coordinator for Substance Abuse Solutions, a program with the Upper Cumberland Human Resources Agency. Ms. Payne stated that Defendant had applied for long-term treatment with the program and that, when she met with him in jail, Defendant showed humility and wanted treatment. She said that, after Defendant was accepted into the program with Substance Abuse Solutions, they learned that Defendant would have to serve part of his sentence before attending treatment. Ms. Payne said that she remained in regular contact with Defendant and told him she would help him receive drug treatment when he was able to go. Ms. Payne testified that she lost her job with Substance Abuse Solutions because of the pandemic and began working for another substance abuse program. She stated that she was willing to work with Defendant in this new program. She testified that, if Defendant were released into the community, she would work to find a transitional program for him where he could receive comprehensive treatment, follow recommendations from mental health providers, and complete classes that would help his

communication and problem-solving skills. She stated that Defendant had also applied for other recovery programs on his own.

At the conclusion of the hearing, the trial court announced that it had considered "the evidence as presented here at the sentencing hearing; the presentence report; the principals of sentencing; and arguments as to alternative sentencing today; and nature and the characteristics and the criminal conduct of [Defendant]." The trial court determined that there were both mitigating and enhancement factors that applied. The court stated that it gave "quite a bit of weight to the fact that . . . [Defendant] has looked back on his life and he sees this constellation of problems and pitfalls." The court noted, however, that Defendant had a "lengthy criminal record from the time that he was eighteen until . . . forty[-]eight years old" and stated that this consideration was "the most significant."

The trial court continued:

With all that being said, there's no statement to consider made by [D]efendant on his own behalf today, just the testimony that we've heard from the witness box [from] his witnesses. His potential for rehabilitation or treatment, and we heard that today from Ms. Payne. We also heard that from Ms. Barker. I find both those witnesses to be credible. I think Ms. Gelinas is credible as well. Looking at the risk needs assessment report, the Strong[-]R Report, those are all the things the court has considered today in making its decision.

Regarding the considerations in Tennessee Code Annotated section 40-35-103, the court found that confinement was "necessary to protect society by restraining a defendant who has a long history of criminal conduct." The court stated that Defendant had "an extremely long history of criminal conduct." The court found that confinement was necessary to avoid depreciating the seriousness of the offense, noting that Defendant had a history of selling drugs and "drug dealing." Further, the trial court found that measures less restrictive than confinement had been applied unsuccessfully to Defendant, noting that Defendant had been on probation previously and violated that probation and "was unsuccessful at least the three times . . . out of this court."

Based on these considerations, the trial court ordered Defendant to serve the ten-year sentence in the Department of Correction. This timely appeal follows.

## Analysis

On appeal, Defendant asserts that the trial court abused its discretion by ordering him to serve his sentence in confinement without considering his amenability to correction

or potential for rehabilitation. Defendant argues that, without analysis of his potential for rehabilitation or likelihood of committing crimes in the future, the trial court "failed to fully evaluate the proof presented at the sentencing hearing as encouraged by state statute and as instructed in case law." The State responds that the trial court properly denied probation. We agree with the State.

When a criminal defendant challenges his sentence on appeal, it is reviewed under an abuse of discretion standard with a presumption of reasonableness afforded to sentences within the proper range and consistent with the purposes and principles of the Sentencing Act. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). To facilitate meaningful appellate review, the trial court must state on the record the factors it considered and the reasons for imposing the sentence chosen. Tenn. Code Ann. § 40-35-210(e) (2020); *Bise*, 380 S.W.3d at 706. However, "[m]ere inadequacy in the articulation of the reasons for imposing a particular sentence . . . should not negate the presumption [of reasonableness]." *Bise*, 380 S.W.3d at 705-06. The abuse of discretion with a presumption of reasonableness standard of review set by our supreme court in *Bise* also applies to a trial court's decision to grant or deny probation. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012) (citing Bise, 380 S.W. 3d at 708). In *State v. Sihapanya*, 516 S.W.3d 473, 476 (Tenn. 2014), the Tennessee Supreme Court further clarified that "a trial court's decision to grant or deny probation will not be invalidated unless the trial court wholly departed from the relevant statutory considerations in reaching its determination." On appeal, the party challenging the sentence bears the burden of establishing that the sentence was improper. Tenn. Code Ann. § 40-35-401 (2020), Sentencing Comm'n Cmts.

Tennessee Code Annotated section 40-35-303 states that

[a] defendant shall be eligible for probation under this chapter if the sentence actually imposed upon the defendant is ten (10) years or less; however, no defendant shall be eligible for probation under this chapter if convicted of a violation of § 39-13-304, § 39-13-402, § 39-13-504, § 39-13-532, § 39-15-402, § 39-17-417(b) or (i), § 39-17-1003, § 39-17-1004 or § 39-17-1005. A defendant shall also be eligible for probation pursuant to § 40-36-106(e)(3).

Tenn. Code Ann. § 40-35-303(a) (2020). Under the revised Tennessee sentencing statutes, a defendant is no longer presumed to be a favorable candidate for alternative sentencing. *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008) (citing Tenn. Code Ann. § 40-35-102(6)). Instead, the "advisory" sentencing guidelines provide that a defendant "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6) (2020). A defendant has the burden of establishing that he is suitable for probation and "demonstrating that probation

will 'subserve the ends of justice and the best interest of both the public and the defendant.'" *Carter*, 254 S.W.3d at 347 (quoting *State v. Housewright*, 982 S.W.2d 354, 357 (Tenn. Crim. App. 1997)).

In determining the proper sentence, a trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made in the defendant's own behalf about sentencing. *See* Tenn. Code Ann. § 40-35-210; *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001).

Under Tennessee Code Annotated section 40-35-103, the trial court should look to the following considerations to determine whether a sentence of confinement is appropriate:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1) (2020). The trial court may also consider the mitigating and enhancing factors set forth in Tennessee Code Annotated sections 40-35-113 and -114. *See* Tenn. Code Ann. § 40-35-210(b)(5) (2020); *State v. Boston*, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). The trial court should also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. Tenn. Code Ann. § 40-35-103(5) (2020); *Boston*, 938 S.W.2d at 438.

In this case, the record shows that, before imposing sentence, the trial court considered the evidence as presented at the sentencing hearing, the presentence report, the principals of sentencing, arguments as to alternative sentencing, and the nature and the characteristics of Defendant's criminal conduct, as well as the factors relevant to probation and sentences of confinement. Defendant contends that the trial court abused its discretion

because it failed to consider his potential for rehabilitation or amenability to correction when denying probation. However, a review of the trial court's sentencing pronouncement shows that it specifically considered those factors. The trial court referenced the testimony of Defendant's witnesses, Ms. Payne and Ms. Barker, and specifically stated that it considered Defendant's "potential for rehabilitation or treatment[.]" The trial court also said that it gave "quite a bit of weight to the fact that . . . [Defendant] has looked back on his life and he sees this constellation of problems and pitfalls." Nevertheless, the trial court also considered the testimony of Ms. Gelinas regarding Defendant's prior record and repeated violations of probation, Defendant's risk needs assessment report, and the fact that his score on the assessment showed a high likelihood of re-offending with drugs. The trial court found that Defendant had a "lengthy criminal record from the time that he was eighteen until . . . forty[-]eight years old" and stated that this consideration was "the most significant."

In determining that a sentence of confinement was appropriate, the trial court reviewed the factors found in Tennessee Code Annotated section 40-35-103(1) and found that confinement was necessary "to protect society by restraining a defendant who has a long history of criminal conduct," that confinement was necessary to avoid depreciating the seriousness of the offense, and that measures less restrictive than confinement had been applied unsuccessfully to Defendant. Tenn. Code Ann. § 40-35-103(1). The court stated that Defendant had "an extremely long history of criminal conduct," that he had "a history of drug, drug dealing, and drug selling," and that he had violated probation at least three times. These findings are supported by the record. The trial court was entitled to weigh the evidence in making its decision, and it clearly stated the numerous reasons that it did not find Defendant to be suitable for probation. Defendant has not shown that the trial court abused its discretion when it denied probation and ordered confinement.

## Conclusion

Accordingly, we affirm the judgment of the trial court.

_____
ROBERT L. HOLLOWAY, JR., JUDGE